UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x

THE  CITY  OF  NEW  YORK  AND  THE  STATE  OF
CALIFORNIA,

|  |  |
|---|---|
| Plaintiffs, | **COMPLAINT** |
| | Civil Action No. 19 cv-____ |
| -against- | |

UNITED STATES POSTAL SERVICE and MEGAN
BRENNAN, *in her official capacity as Postmaster
General,*

Defendants.

----------------------------------------------------------------------- x

# TABLE OF CONTENTS

Nature of The Action ........................................................................4

Parties .............................................................................................5

Jurisdiction and Venue......................................................................5

Factual Allegations ..........................................................................6

    I.    Plaintiffs' Interest In Protecting The Public Health...................6

    II.   Cigarette Taxation and Regulation In New York and California ..............7

    III.   Cigarette Tax Avoidance and Evasion Practices .....................8

    IV.  The PACT Act.....................................................................10

      A. Cigarettes Are Non-Mailable .................................................11

      B. The Non-Compliant List .......................................................13

    V.    The USPS's Unlawful Transport and Delivery of Cigarettes.................14

      A. The USPS's Obstruction of the PACT Act's Mandate...........14

      B. Shipment of Cigarettes in the International Mail....................15

      C. The USPS's Knowledge of Cigarettes in the International Mails ..........16

        1. Yessmoke.com ..................................................................18

        2. 2011 Operation Smokeout...............................................19

        3. Altria Inc.'s Investigation of Websites Selling  Counterfeit Cigarettes and Counterfeit Tax-Stamped Cigarettes.................19

      D. City Investigations of USA001.com ......................................22

E.  Federal, State and City Investigations of Classica International Express (C.I.E.) ..................................................................................................24

F.  California's Investigations of the USPS's Cigarette Shipments..............30

G.  The 2018 Audit of the USPS's John F. Kennedy International Mail Facility .......................................................................................................34

VI.  The USPS Return To Sender Program ........................................................38

A.  The USPS RTS Program is Illegal and Ineffective..................................39

B.  Contraband *Per Se*..................................................................................45

VII.  Postmaster General Megan Brennan's Acts Are *Ultra Vires*...................47

FIRST CLAIM FOR RELIEF ..................................................................................47

Violation of the PACT Act (18 U.S.C. § 1716E) ...............................................47

SECOND CLAIM FOR RELIEF .............................................................................49

Declaratory Judgment Pursuant to 28 U.S.C. § 2201 .......................................49

THIRD CLAIM FOR RELIEF .................................................................................50

Writ of Mandamus Pursuant to 28 U.S.C. § 1361 ...........................................50

Plaintiffs the City of New York (the "City"), by its counsel Georgia M. Pestana, Acting Corporation Counsel of the City of New York, and the State of California, by its Attorney General Xavier Becerra (collectively, "Plaintiffs"), with knowledge of their own actions and on information and belief as to the actions of others, bring this action against the United States Postal Service and Megan Brennan in her official capacity as Postmaster General (collectively, the "USPS").

## Nature of The Action

1.      In violation of the Prevent All Cigarette Trafficking Act of 2009 (the "PACT Act"), 15 U.S.C. § 375 *et seq*. and 18 U.S.C. § 1716E, the USPS accepts and transmits through the mail packages known or reasonably believed by the USPS to contain cigarettes. The conduct of the USPS deprives state and local governments of millions of dollars in tax revenue and thwarts the public health policies of those jurisdictions.

2.      Plaintiffs bring this civil action for an order under the PACT Act (i) permanently enjoining the USPS from accepting for delivery or transmitting through the mails any package the USPS knows or reasonably believes contains cigarettes; (ii) declaring that the USPS is violating the PACT Act by accepting and transmitting packages through the mails that the USPS knows or reasonably believes contain cigarettes; (iii) compelling the Postmaster General to comply with the nondiscretionary mandate in the PACT Act prohibiting the USPS from accepting and transmitting through the mails packages that the USPS knows or reasonably believes contain cigarettes; (iv) declaring cigarettes defined by 18 U.S.C. § 2341(2) ("contraband cigarettes")[1] found within the mails to be contraband *per se* and enjoining the return of those

---

[1]  18 U.S.C. § 2341(2) defines contraband cigarettes as a quantity of cigarettes in excess of 10,000 on which applicable taxes have not been paid. *See United States v. Hasan*, 846 F. Supp. 2d 541, 543 (E.D. Va. 2012) (contraband cigarettes are cigarettes that "bear no evidence of the payment of applicable State or local cigarette

cigarettes to senders; and (v) awarding Plaintiffs the other appropriate relief as provided by the PACT Act.

## Parties

3.       Plaintiff the City of New York is a municipal corporation organized under the laws of the State of New York.

4.       Plaintiff the State of California brings this action through its duly elected Attorney General, Xavier Becerra, who is the chief law enforcement officer of the State of California. Cal. Const., art. 5, § 13.

5.       Defendant United States Postal Service, with a principal place of business at 475 L'Enfant Plaza SW, Washington, DC 20260-0546, is an independent establishment of the executive branch of the United States government, empowered by Congress to sue and be sued in its own name. The United States Postal Service is responsible for the delivery of domestic and international mail in the United States.

6.       Defendant Megan Brennan is the Postmaster General of the United States. She is sued in her official capacity but has acted and is acting *ultra vires* by operating the USPS to accept and transmit through the mails packages that the USPS knows or reasonably believes contain cigarettes, without statutory authority to do so.

## Jurisdiction and Venue

7.       This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1716E, 15 U.S.C. § 378, 39 U.S.C. § 409(a), 28 U.S.C. § 1331, 28 U.S.C. § 1339 and 28 U.S.C. § 1361.

---

taxes in the State or locality where such cigarettes are found").  Contraband cigarettes are commonly also referred to as "untaxed" or "unstamped" cigarettes.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occur in this district.

**Factual Allegations**

**I.   Plaintiffs' Interest In Protecting The Public Health**

9.      Cigarette smoking is a leading cause of preventable premature death in the United States.  Smoking annually kills more than 480,000 people nationwide, including 26,000 New Yorkers and 40,000 Californians, a figure that exceeds the combined number of deaths from alcohol, motor vehicle collisions, and firearms.

10.     Smoking-related disease is a substantial drain on the public treasury, costing approximately $300 billion a year in medical care costs and lost productivity.  New Yorkers spend approximately $10.4 billion a year in health-care costs related to tobacco use, including $3.3 billion in Medicaid expenditures.  Californians spend approximately $13.29 billion in annual health care costs related to smoking, including $3.58 billion in Medicaid costs.

11.     The public health and economic costs of tobacco use have compelled all levels of government to regulate strictly the sale and use of tobacco.  Numerous studies have shown that smoking is most effectively discouraged by increasing the cost of cigarettes through the imposition of cigarette taxes.  Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease*, at 654 (2010) (noting that "increases in the price of cigarettes through excise taxes . . . are an effective policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit"); Report of the Surgeon General, *E-Cigarette Use Among Youth and Young Adults*, at 155 (2016) ("[t]he sizeable body of research examining the effects of taxes and prices on the sale and use of conventional cigarettes . . . leads to the conclusion that price increases resulting from higher excise taxes are effective tools for

reducing cigarette consumption, especially among youth"); Nathan J. Doogan, et al., *The impact of a federal cigarette minimum pack price policy on cigarette use in the USA*, Tobacco Control, 27:203-208 (2018).[2]  To discourage cigarette use, certain City and State governments impose high cigarette taxes.

## II.  Cigarette Taxation and Regulation In New York and California

12.     The State and City of New York and the State of California each impose an excise tax on cigarettes.

13.     One carton of cigarettes contains ten (10) packs of twenty (20) cigarettes.  At all times relevant to this complaint, the New York City excise tax has been $1.50 per pack or $15.00 per carton, and the New York State excise tax has been $4.35 per pack or $43.50 per carton.  The California State excise tax has been $2.87 per pack or $28.70 per carton since April 1, 2017; at all relevant times before that date, the California excise tax was $0.87 per pack or $8.70 per carton.

14.     Every pack of cigarettes possessed for sale or use in New York State, with exceptions not relevant here, is required to have affixed to it a New York State excise tax stamp, which serves as proof that the tax has been paid, evidencing revenue to the State of $4.35. N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a)(1).  Every pack of cigarettes possessed for sale or use in New York City is required to have affixed to it a joint New York State/New York City tax

---

[2] *See also* Martijin van Hasselt, et al., The relation between tobacco taxes and youth and young adult smoking: What happened following the 2009 U.S. federal tax increase on cigarettes?, Addictive Behaviors, 45:104-109 (2015); Chaloupka FJ, Yurekli A, Fong GT. Tobacco taxes as a tobacco control strategy. Tob Control 2012; 21:172–80; Inst. of Med., Ending the Tobacco Problem: A Blueprint for the Nation 80, 182 (2007); *Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, Serial No. 110-47, at 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids); International Agency for Research on Cancer (IARC) Handbook of Cancer Prevention Volume 14: Effectiveness of Tax and Price Policies for Tobacco Control. *See* chapters 5 (adult) and 6 (youth) (the response of youths to increases in cigarette prices is even greater, with a ten-percent price increase reducing the number of youth smokers by an estimated six or seven percent).

stamp, which serves as proof that the tax has been paid, the City's share of which is $1.50 in revenue.  N.Y.C. Admin. Code § 11-1302(g).  In California, all cigarettes sold must have tax stamps affixed to them, evidencing revenue to the State of $2.87 or, prior to April 1, 2017, of $0.87, as required by Cal. Rev. & Tax. Code § 30161.

15.     Both New York State and California mandate that stamping agents serve as the only entry point for cigarettes into the State's stream of commerce.  By law, the stamping agent must incorporate the amount of the tax into the price of the cigarettes, thereby passing the tax burden, not the tax itself, on to each subsequent cigarette purchaser in the distribution chain, and ultimately to the consumer, as required under N.Y. Tax L. § 471, N.Y.C. Admin. Code § 11-1302(e) and (h) and Cal. Rev. & Tax. Code § 30161.

### III.     Cigarette Tax Avoidance and Evasion Practices

16.     State and local governments independently set the amount of imposed cigarette taxes, giving rise to significant differences in cigarette taxes, and hence cigarette prices, among different taxing jurisdictions.  Cigarettes can accordingly be purchased far more cheaply in jurisdictions that impose low cigarette taxes, for example to promote their tobacco industries, than in jurisdictions that seek lower health care costs by the reductions in smoking that result from high cigarette taxes.

17.     The cigarette price differences created by varying tax rates among jurisdictions set the stage for cigarette tax evasion, when residents of high-tax jurisdictions seek the lower cigarette prices available in low-tax jurisdictions.  Smugglers earn substantial profits by serving this "cross-border" market, purchasing at the lower price available in low-tax jurisdictions and selling the cigarettes at higher, but still below-market prices, in high-tax jurisdictions.

18.     The tax evasion accomplished by cross-border smuggling undercuts the public health policies of jurisdictions that seek to limit smoking by maintaining high cigarette prices.

- 8 -

Accordingly, "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]"   Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease* (2010), at 654; Nathan J. Doogan, et al., *The Impact of a Federal Cigarette Minimum Pack Price Policy On Cigarette Use In The USA*, Tobacco Control, 27:203-208 (2018).

19.    Although it has been argued that high taxes cause cigarette smuggling, it is more accurately concluded that price disparities drive smuggling, not high or low taxes *per se*.   Price disparities are as attributable to the choice of tobacco-producing jurisdictions to maintain low taxes as to the choice of jurisdictions that seek to reduce smoking by imposing higher cigarette taxes.

20.    Cross-border tax evasion exploded with the advent of the Internet, which enabled Internet cigarette vendors in low-tax jurisdictions to advertise and sell cigarettes to distant residents of high-tax jurisdictions, with neither party to the sale paying the cigarette tax owed to the buyers' states.   Internet cigarette sellers rapidly grew into a marketplace of hundreds of on-line vendors, physically located in low-tax jurisdictions throughout the United States and worldwide.

21.    Cross-border tax evasion requires the transport of cigarettes purchased in low-tax jurisdictions to buyers in high-tax jurisdictions.   Internet cigarette sellers are thus entirely dependent on the ability to deliver cigarettes to on-line buyers typically located in distant, high-tax jurisdictions.   Internet cigarette sellers accordingly turned to the USPS and private package delivery services to transport and deliver untaxed cigarettes across state lines, notwithstanding

that such conduct has constituted a federal felony since the passage of the Contraband Cigarette

Trafficking Act of 1978, and was again criminalized by the PACT Act of 2009.

## IV.    The PACT Act

22.    Interstate deliveries of cigarettes sold over the Internet became so pervasive, and

the ill effects of the deliveries so evident, that Congress enacted the PACT Act of 2009, codified

at 15 U.S.C. §§ 375-378 and 18 U.S.C. § 1716E, to regulate interstate cigarette deliveries.

23.    Congress found the PACT Act to be necessary because:

(1)    The sale of illegal cigarettes and smokeless tobacco products significantly reduces Federal, State, and local government revenues, with Internet sales alone accounting for billions of dollars of lost Federal, State, and local tobacco tax revenue each year;

(2)    Hezbollah, Hamas, al Qaeda, and other terrorist organizations have profited from trafficking in illegal cigarettes or counterfeit cigarette tax stamps;

(3)    terrorist involvement in illicit cigarette trafficking will continue to grow because of the large profits such organizations can earn;

(4)    the sale of illegal cigarettes and smokeless tobacco over the Internet, and through mail, fax, or phone orders, makes it cheaper and easier for children to obtain tobacco products;

(5)    the majority of Internet and other remote sales of cigarettes and smokeless tobacco are being made without adequate precautions to protect against sales to children, without the payment of applicable taxes, and without complying with the nominal registration and reporting requirements in existing Federal law;

(6)    unfair competition from illegal sales of cigarettes and smokeless tobacco is taking billions of dollars of sales away from law-abiding retailers throughout the United States;

(7)    with rising State and local tobacco tax rates, the incentives for the illegal sale of cigarettes and smokeless tobacco have increased;

      (8)    the number of active tobacco investigations being conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives rose to 452 in 2005;

      (9)    the number of Internet vendors in the United States and in foreign countries that sell cigarettes and smokeless tobacco to buyers in the United States increased from only about 40 in 2000 to more than 500 in 2005;

      (10)   the intrastate sale of illegal cigarettes and smokeless tobacco over the Internet has a substantial effect on interstate commerce.

Pub. L. No. 111-154 § 1(b); 124 Stat. 1087 (2010).

    24.    Congress intended through the PACT Act to:

      (1)    require Internet and other remote sellers of cigarettes and smokeless tobacco to comply with the same laws that apply to law-abiding tobacco retailers;

      (2)    create strong disincentives to illegal smuggling of tobacco products;

      (3)    provide government enforcement officials with more effective enforcement tools to combat tobacco smuggling;

      (4)    make it more difficult for cigarette and smokeless tobacco traffickers to engage in and profit from their illegal activities;

      (5)    increase collections of Federal, State, and local excise taxes on cigarettes and smokeless tobacco; and

      (6)    prevent and reduce youth access to inexpensive cigarettes and smokeless tobacco through illegal Internet or contraband sales.

Pub. L. No. 111-154 § 1(b); 124 Stat. 1087 (2010).

## A.    Cigarettes Are Non-Mailable

    25.    The PACT Act achieves these goals in part by prohibiting the USPS from accepting for delivery or transmitting through the mails any package that the USPS knows or has reasonable cause to believe contains any cigarettes:

> All cigarettes and smokeless tobacco . . . are nonmailable and shall not be deposited in or carried through the mails. The *United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes* or smokeless tobacco made nonmailable by this paragraph.

18 U.S.C. § 1716E (a)(1) (emphasis added).[3]

      26.    Under the heading "Reasonable cause," Congress provided a non-exclusive list of the circumstances in which the USPS has reasonable cause to believe that a package contains cigarettes:

> For the purposes of this subsection reasonable cause includes –
>
> (A) a statement on a publicly available website, or an advertisement, by any person that the person will mail matter which is nonmailable under this section in return for payment; or
>
> (B) the fact that the person is on the list created under section 2A(e) of the Jenkins Act [15 USCS § 376a(e)].

18 U.S.C. § 1716E (a)(2); Pub. L. No. 111-154 § 3(a).[4]

---

[3] As to cigarette sellers themselves, the PACT Act requires, among other things, that "delivery sales" – sales in which the buyer and seller are not in one another's physical presence – i) be made in conformance with all laws of the buyer's jurisdiction, including tax and stamping laws; ii) be reported to the buyer's jurisdiction; and iii) comply with specific federal labeling, age verification and delivery requirements. *See* 15 U.S.C. §§ 375-378.

[4] *See also* USPS regulations at 39 C.F.R. § 111.1; 75 Fed. Reg. 29662-29671:

> If the Postal Service reasonably suspects that a mailer is tendering nonmailable cigarettes or smokeless tobacco, then the mailer bears the burden of proof in establishing eligibility to mail. The Postal Service has reasonable cause not to accept for delivery or transmit a package based on:
>
> a. A statement on a publicly available Web site, or an advertisement, by any person that the person will mail matter which is nonmailable under this section in return for payment; or
>
> b. The fact that the mailer or other person on whose behalf a mailing is being made is on the U.S. Attorney General's List of Unregistered or Noncompliant Delivery Sellers.

27.     Thus, the USPS "knows or has reasonable cause to believe" that a package contains cigarettes, *inter alia*, when any person states on a publicly available website or an advertisement that the person will mail cigarettes in return for payment.

### B.     The Non-Compliant List

28.     The "list created under section 2A(e) of the Jenkins Act" referred to above is the list compiled pursuant to the PACT Act, 15 U.S.C. § 376a(e), which requires the Attorney General of the United States to compile a "List of unregistered or noncompliant cigarette sellers" "that have not registered with the Attorney General of the United States pursuant to section 2(a) [15 USCS § 376(a)], or that are otherwise not in compliance with this Act [15 USCS §§ 375 et seq.]" (the "Non-Compliant List" or "NCL").  The PACT Act requires the Attorney General to distribute the NCL to the USPS, and to other delivery services, and the USPS has received the NCL since the enactment of the PACT Act. The Non-Compliant List presently contains the names of at least 40 international cigarette sellers.

29.     The PACT Act further provides that:

> [N]o person who receives the [Non-Compliant] list …. and no person who delivers cigarettes or smokeless tobacco to consumers, shall knowingly complete, cause to be completed, or complete its portion of a delivery of any package for any person whose name and address are on the list, unless [exceptions not relevant here]

15 U.S.C. § 376a(e)(2).

30.     The knowledge required for liability under 15 U.S.C. § 376a(e)(2) is knowledge that the package has been shipped by a person listed on the Non-Compliant List, unless (i) the person delivering knows or believes in good faith that the package does not include cigarettes; (ii) the delivery is made to a person lawfully engaged in the business of manufacturing, distributing, or selling cigarettes or smokeless tobacco; or (iii) the package being delivered weighs more than 100 pounds and the person making the delivery does not know or have

reasonable cause to believe that the package contains cigarettes or smokeless tobacco.  None of these exceptions apply here.

### V.        The USPS's Unlawful Transport and Delivery of Cigarettes

31.     Despite passage of the PACT Act in 2010, the USPS continues knowingly to transport and deliver unstamped cigarettes to postal patrons nationwide, including in New York City and California, to the present day.  The USPS's failure to comply with its obligations under the PACT Act, documented below, thwarts each and every goal expressed by Congress in the statute.

### A.        The USPS's Obstruction of the PACT Act's Mandate

32.     Officials at the highest levels of the USPS have known for years of the USPS's illegal transport and nationwide delivery of cigarettes from international sellers but have failed to meet the PACT Act's mandate that the "United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes."

33.     The PACT Act was an "unfunded mandate"; in passing the PACT Act, Congress appropriated no additional funds to permit the USPS to pay for enforcement and compliance measures. The prohibition against cigarettes in the mail was also a significant financial detriment to the USPS, which earned substantial revenue from shipping cigarettes for Internet sellers.

34.     Resistance by the USPS to the PACT Act's requirements commenced as soon as the Act went into effect.  By letter dated June 28, 2010, from Patrick R. Donahoe, Deputy Postmaster General and Chief Operating Officer, the USPS's Vice Presidents and Area Operations District Managers were informed that the PACT Act was to take effect on June 29, 2010, but were instructed that:

Operations field personnel should *not* do the following:

• Investigate a customer's advertising for the purpose of determining whether the customer is mailing cigarettes or smokeless tobacco in unlawful sales transactions through the mail.

• Investigate or seek information about the U.S. Attorney General List of Unregistered or Noncompliant Delivery sellers.

35.     The letter continued: "Responsibility for evaluating advertising and conducting follow up when a customer's name appears on the Attorney General List of Unregistered or Noncompliant Delivery Sellers will not be a field operations responsibility, and will be reserved for specially designated personnel.   Postal field personnel should cooperate with those designated individuals when requested."

36.     The USPS never provided "specially designated personnel" "to evaluate and conduct follow up" when customer names appeared on the Non-Compliant List.  The USPS field operations did little or nothing when confronted with large shipments of cigarettes found within the mails.

**B.      Shipment of Cigarettes in the International Mail**

37.     Despite the absence of enforcement by the USPS, United States-based domestic Internet cigarette sellers largely ceased delivering cigarettes through the mail after passage of the PACT Act.  Domestic shippers presumably recognized their vulnerability to law enforcement if they continued their illegal use of the postal system for cigarettes deliveries. The PACT Act appears to have deterred domestic cigarette sellers from depositing commercial quantities of cigarettes in the domestic mails.

38.     International cigarette sellers are less vulnerable to United States-based law enforcement, and the Internet cigarette trade responded accordingly.  After the effective date of the PACT Act, and the increased risk to U.S.–based Internet cigarette sellers of using the mails, some domestic cigarette sellers developed the strategy of evading the PACT Act's mail ban by

using international fulfillment of their orders: cigarettes ordered from U.S.–based Internet sites were mailed to U.S. buyers from overseas postal facilities, using the international mails. Cigarettes deposited in international postal systems are transferred into the domestic mails upon reaching the United States. From there, the USPS delivers those packages throughout the United States.

39.     Some U.S.–based Internet cigarette sellers even changed their names to reflect the new delivery strategy, which used the international mails as the first leg of a cigarette delivery. In one example, an investigation by the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") determined that the owners of a domestic Internet cigarette seller formerly known as "YourKentuckyTobaccoResource.com" changed its name to "ESR.com," which stood for "European Supply Resource."  The re-named company simply continued to receive cigarette orders at its Kentucky location but, instead of shipping cigarettes from there (as it had previously), the company had the cigarettes mailed to U.S. customers through the international mail by shippers in Israel and the former Soviet Republics of Moldova, Ukraine, and Kyrgyzstan.

40.     Thus, although the PACT Act successfully reduced the amount of cigarettes mailed from U.S. locations, cigarette shipments that entered the USPS through international postal services continued.

### C.     The USPS's Knowledge of Cigarettes in the International Mails

41.     Since the passage of the PACT Act, officials from New York City, the California Attorney General, the attorneys general of other states, ATF and members of private industry have continuously informed the USPS that the international mails are a source of the USPS's cigarette deliveries.  Each of those agencies has identified to the USPS particular cigarette sellers whose shipments enter the domestic mails from the international mails.

42.     The USPS has itself long been aware that Internet sellers use the mails to ship cigarettes. Workers of the USPS are able to identify packages that contain cigarettes and have identified and assembled large numbers of packages containing cigarettes when requested to do so by law enforcement.

43.     Once found to contain cigarettes during the package sampling conducted by U.S. Customs and Border Control ("CBP"), the uniform appearance of packages shipped by bulk cigarette sellers allows easy identification by the USPS's personnel of subsequent shipments. For example, in connection with ATF's "Stop Sticks" investigation described below, the cigarette packages were all of a size and shape consistent with cartons of cigarettes, were uniform in appearance, and had the same return addresses, as illustrated in an April 2013 photograph:



44.     The USPS itself has published photographs of packages of cigarettes collected within its postal facilities in connection with its "Return to Sender" program described below:



*Prohibited Inbound International Mailings*, Rpt. No. Ms-Ar-17-008 At 9 (July 18, 2017) ("*Prohibited Mailings Rpt*").

### 1. Yessmoke.com

45.     The USPS's knowledge of bulk cigarette sales delivered through the international mails extends back at least to 2004, when the USPS learned that its International Mail Facility at John F. Kennedy Airport ("JFK-IMF") was a major port of entry for cigarettes sold over the Internet.

46.     In November 2004, ATF conducted an operation against the Swiss Internet cigarette seller "Yessmoke.com," which sold large quantities of cigarettes that were neither licensed for sale in the United States nor affixed with state tax stamps.   ATF seized and eventually destroyed an estimated 150,000 cartons of cigarettes delivered by a single Swiss Postal Service cargo plane to the JFK-IMF.   Prior to the seizure, tens of thousands of cartons of cigarettes from Yessmoke.com had been transported each week through the JFK-IMF and delivered to consumers by the USPS.

## 2. 2011 Operation Smokeout

47.    In 2011, over a three-month period, U.S. Immigration and Customs Enforcement (ICE) and Homeland Security Investigations (HSI), joined by CBP, the U.S. Postal Inspection Service, the Queens District Attorney's office, the Port Authority Police, and the New York State Department of Taxation and Finance, conducted "Operation Smokeout," an investigation of cigarette trafficking through the USPS's JFK-IMF.

48.    The investigation resulted in criminal charges for traffickers, and the seizure of more than 4,000 cartons of untaxed cigarettes and nearly $400,000 in cash and property. Many of the cigarettes seized had been brought into the United States by arriving international passengers, but also through the USPS's JFK-IMF.

## 3. Altria Inc.'s Investigation of Websites Selling
## Counterfeit Cigarettes and Counterfeit Tax-Stamped Cigarettes

49.    In 2012, Altria, Inc., informed the USPS that counterfeit[5] and counterfeit-stamped cigarettes were being delivered into the United States mail by means of the international mail.

50.    Between January 7, 2012 and June 15, 2012, Altria received deliveries of approximately 1,770 cartons of cigarettes ordered from such Internet websites as "marlborocigarettes2012.com," "newportcigarettes.org," "topluckmall.com," "cheap-cigarettessale.com," "marlboroscigarettes.com," "cheapnewportcigarettes.com" and "newports-cigarettes.org." The cigarettes had all passed through the USPS mail facility at JFK airport and were destined for addresses in New York State, principally New York City. The cigarettes were either unstamped or stamped with what purported to be New York, New Jersey, Virginia, or Pennsylvania tax stamps.

---

[5] "Counterfeit" cigarettes are cigarettes manufactured without the authorization of the owner of the applicable trademarks, copyrights and specifications of the product.

51.     Between June 11, 2013 and September 17, 2013, Altria, Inc. investigators placed orders for cigarettes at such additional websites as cheapcigaretteswholesaler.com, USA001.com, freeshippingcigarettes.com, and ilovecigarette.net, also believed to be owned by companies located in China.  The USPS processed the cigarettes through sorting facilities in Chicago, Illinois and New York City, and delivered cigarettes to customers in New York State.

52.     The cigarettes delivered by the USPS from the Chinese websites were counterfeit, *i.e.*, they bore the brand names and trademarks of such U.S. cigarette manufacturers as Philip Morris USA and R.J. Reynolds Tobacco Company but were not manufactured by those companies.  The cigarette packages were stamped with purported New York State tax stamps, which were undoubtedly counterfeit because only New York-licensed stamping agents may obtain and apply New York tax stamps, and no such licensees are located in China.

53.     The cigarette orders made between June 11, 2013 and September 17, 2013 were placed on a website bearing the name USA001.com, which at that time openly advertised sales of cigarettes affixed with what were undoubtedly counterfeit New York, Texas, Indiana, Florida, Alabama, New Jersey, Virginia, Illinois or Chicago tax stamps. USA001.com assured its customers that if their orders were "caught" by U.S. Customs, the company would re-ship the product to the customer:



http://usa001.com/product_read.aspx?pid=18123                3/26/2014

54.    The USA001.com website presently advertises that the company will send cigarettes to its customers via the USPS by including the EMS Express logo on its website, an indication that the cigarettes will be delivered in the U.S. by the USPS.[6]

55.    Many of the cigarettes purchased from the above-named websites were delivered to what appear to be commercial re-sellers.  Thus, on the same or similar dates in February and March 2012, entities known as Skyline, Global Trading, NEP Communications, FDR Worldwide, and JPM Worldwide each received packages of 60 cartons of Marlboro® cigarettes, without tax stamps affixed.  The packages were delivered by the USPS to private mail centers, such as "Bay Ridge Mail Station," "Lincoln Postal," or "Postal Mailing and Shipping Center," suggesting that the package recipients sought to conceal their addresses.

---

[6] EMS is an international postal Express Mail Service.  The EMS service in the United States is Priority Mail Express International, which is part of the USPS.  *See* https://www.ems.post/en/global-network/ems-operators/ems-united-states-america.

**D.      City Investigations of USA001.com**

56.      The City also investigated the USA001.com website from which the above-described purchases were made.

57.      On or about April 1, 2014, an investigator from the Office of the New York City Sheriff wired funds into an account designated by the USA001.com website.  Subsequently, the investigator placed an order with USA001.com for three cartons of Newport® cigarettes and two cartons of Marlboro® cigarettes, accompanied by a request that New York tax stamps be affixed. Delivery was requested for a post office box at a U.S. Post Office in New York City.

58.      On or about April 22, 2014, investigators from the Sheriff's Office retrieved a package from the requested post office box at the U.S. Post Office in Long Island City, NY. The package contained the three cartons of Newport® cigarettes and two cartons of Marlboro® cigarettes.  None of the cigarette packages were affixed with tax stamps.

59.      An examination of the Marlboro® cigarettes determined that they were counterfeit.

60.      On or about May 6, 2014, an investigator from the Office of the New York City Sheriff wired funds into an account designated by the USA001.com website.  Subsequently, the investigator placed an order with USA001.com for two cartons of Newport® 100 cigarettes and three cartons of Marlboro Gold® cigarettes, requesting that New York tax stamps be affixed. Delivery was requested for a post office box at the U.S. Post Office in Long Island City, NY.

61.      In or about May 2014, investigators from the Office of the New York City Sheriff retrieved a package from the designated post office box at the U.S. Post Office in Long Island City, NY. The package contained the two cartons of Newport® 100 cigarettes and three cartons of Marlboro Gold® cigarettes.  The cigarette packages were affixed with what were determined to be counterfeit New York tax stamps.

- 22 -

62.     An examination of the Marlboro Gold® cigarettes determined that they too were counterfeit.

63.     The sale by USA001.com of cigarettes bearing Marlboro trade dress violates a permanent injunction entered against the company. *Philip Morris USA Inc. v. Olymall.com, et al.*, No. 11 Civ. 1007 (ALC) (S.D.N.Y. Jan. 17, 2014).

64.     USA001.com was added to the PACT Act Non-Compliant List in 2017.

65.     City investigations reveal that cigarettes ordered from USA001.com are even now delivered into New York City by the USPS.  On or about July 22, 2019, an investigator from the City Sheriff's Office placed an order with USA001.com for ten (10) cartons of Newport® cigarettes, accompanied by a request that New York tax stamps be affixed.  Delivery was requested for a post office box at a U.S. Post Office in Long Island City, New York.

66.     The City investigator tracked the USA001.com cigarette purchase on the USPS's online tracking system at https://www.usps.com/faqs/uspstracking-faqs.htm.  The order was broken into two shipments: each shipment contained five cartons of cigarettes.  The tracking number for the first five cartons of cigarettes was LT984137929CN.  The tracking number for the remaining five cartons was LT984137858CN.

67.     According to the USPS's online tracking system, the first shipment of five cartons of cigarettes went through the Fuzhou, China EMS facility on July 28, 2019.  Then, on July 30, 2019, the cigarette package was processed through the USPS's JFK-IMF.  That same day, the cigarette package arrived at the USPS's Regional Destination Facility in Queens, NY, and reached the USPS Post Office in Long Island City, NY the next day.

68.     The USPS's tracking system indicated the cigarette shipment was delivered to the requested post office box in Long Island City, NY on or about July 31, 2019.

69.     On August 1, 2019, the investigator from the Sheriff's Office retrieved a package from the post office box at the U.S. Post Office, Long Island City, NY. The package contained the five (5) cartons of Newport® cigarettes ordered by the investigator. The cigarette packages were affixed with counterfeit New York tax stamps.  The cigarettes were also counterfeit.

70.     According to the USPS's online tracking system, the second shipment of five cartons of cigarettes went through the Fuzhou, China EMS facility on July 29, 2019.  Then, on August 2, 2019, the cigarette package was processed through the USPS's International Service Center for Inbound International Mail in New York.  That same day, the cigarette package arrived at the USPS's Regional Facility in Stamford, CT, and then the USPS Regional Facilities in Jersey City and Brooklyn the next day.  On August 4, 2019, the cigarette order reached the USPS's Regional Facility in Queens, NY, before arriving at the USPS Post Office in Long Island City, NY the same day.

71.     The USPS's tracking system indicated this second cigarette shipment was delivered to the requested post office box in Long Island City, NY on or about August 5, 2019.

72.     On August 5, 2019, Sheriff's Office investigator retrieved a package from the post office box at the U.S. Post Office, Long Island City, NY. The package contained the remaining five (5) cartons of Newport® cigarettes ordered by the investigator. The cigarette packages were identical to the five other cartons – the cigarettes were counterfeit and affixed with counterfeit New York tax stamps.

**E.     Federal, State and City Investigations of Classica International Express (C.I.E.)**

73.     In or about 2012, ATF commenced an investigation titled "Operation Stop Sticks," which sought to uncover the source of thousands of cartons of cigarettes being mailed through the USPS from Israel and the former Soviet Republics of Moldova, Ukraine, and Kyrgyzstan.  The investigation revealed that for several years the USPS had been delivering

- 24 -

cigarettes nationwide for Classica International Express Ltd 2007 a/k/a C.I.E., Ltd, located in Israel, at Ha Rav Jerufi Shalom 3, Rishon Le Zion, and its affiliate Money Call Ltd, (collectively, "C.I.E.").

74.    C.I.E. owns, operates and controls a bonded warehouse that fulfills orders for duty free products, including duty free cigarettes.

75.    Since at least 2012, C.I.E. has owned, operated or controlled numerous websites that sell cigarettes, including "DutyFreeDepot.com," "Top-DutyFree.com," "Duty-Free Smokes a/k/a DF-Smokes.com," and "Pro-Smokes a/k/a Pro-Smokes.com," to name a few.   In 2014, DutyFreeDepot.com advertised itself as "Duty Free Depot, your one stop shop for cheap cigarettes, cigars and tobaccos since 2006!"

76.    C.I.E. shipped cigarettes from Israel to fulfill orders placed by United States consumers with various United States-based Internet cigarette sellers, including "Your Kentucky Tobacco Resource.com," "Cigarettegirl.com," "A-1 Discount Cigarettes" and "Paylesscigarettes.com." C.I.E. worked with those United States-based cigarette sellers to fulfill orders of unstamped cigarettes placed by U.S. customers with U.S.– based cigarette sellers.

77.    During the 2014 time-period, the DutyFreeDepot website contained a "Contact Us" section.  Under the section "How is it possible to sell cigarettes . . . at such low prices" the webpage deceptively stated: "The products on sale at DutyFreeDepot are offered in the same way as they are sold in duty free zones, where they are not subject to taxes. Manufacturers ship products directly to our duty free zone." The websites failed to inform U.S. buyers that taxes were owed upon arrival of the cigarettes in the buyers' home states.

78.    ATF learned during Operation Stop Sticks that C.I.E.'s cigarettes passed through the USPS's JFK-IMF, and that the USPS delivered cigarettes for C.I.E. nationwide. Significant

quantities of the C.I.E.'s packages ordered from DutyFreeDepot.com and other C.I.E.-controlled websites were shipped through the USPS's JFK-IMF.

79.     During the period between 2012 and 2014, the USPS was informed of Operation Stop Sticks and of the investigative and enforcement activities of ATF at the JFK-IMF.  The Stop Sticks investigation resulted in the indictment of a principal of C.I.E., and the January 2016 conviction of the principals of the U.S.-based Internet cigarette sellers and Russian nationals for criminal offenses arising out of the delivery of untaxed cigarettes throughout the United States. *See United States v. Maddux et al,* 0:14-cr-00020-DLB-EBA (E.D.K.Y. 2014), *aff'd*, *United States v. Maddux*, 917 F.3d 437 (6th Cir. 2019).

80.     During the Stop Sticks investigation, City investigators confirmed C.I.E.'s delivery of cigarette through the mails.  In May 2013 and February 2014, City investigators placed orders for one carton of Newport® cigarettes and two cartons of Newport® cigarettes, respectively, at www.DutyFreeDepot.com.  On or about June 5, 2013, a package containing one carton of Newport® cigarettes was delivered by a mail carrier for the USPS to the ordering investigator at the address provided with the order.  The package showed a return address of "C.I.E. Ltd., P.O. Box 5048, Rishon Letzion, 75150, Israel."  None of the packs of cigarettes in the order were affixed with New York State or City tax stamps.

81.     On or about March 14, 2014, the second order of two cartons of cigarettes was delivered by registered mail, to an address in Long Island City, New York provided by the ordering investigator.  The package showed a return address of "C.I.E. Ltd., P.O. Box 5048, Rishon Letzion, 75150, Israel."  None of the packs of cigarettes in the order were affixed with New York State or City tax stamps.

82.     In May 2013 and February 2014, City investigators placed orders for one carton of Newport® cigarettes and for two cartons of Marlboro Red® cigarettes, respectively, at Top-DutyFreeDuty.com, a website that advertised the sale of various "duty free" products, and prominently featured cigarettes.

83.     On or about June 6, 2013, a mail carrier for the USPS delivered a package containing one carton of Newport® cigarettes to the ordering investigator at the Long Island address provided by the investigator.  The package showed a return address of "C.I.E. Ltd., P.O. Box 5048, Rishon Letzion, 75150, Israel."  None of the packs of cigarettes in the order were affixed with New York State or City tax stamps.

84.     On or about March 31, 2014, two cartons of Marlboro Red® were delivered by registered mail, to a post office box at the U.S. Post Office in Long Island City, NY.  The packages of cigarettes inside were not stamped with New York State or City tax stamps.

85.     On August 25, 2014, an investigator for the State of California Department of Justice purchased one carton of American Legend cigarettes from Dutyfreedepot.com to be mailed to an address in San Diego, California.

86.     On October 7, 2014, the California investigator received a package containing one carton of American Legend cigarettes.  The return address on the package was C.I.E. LTD., PO Box 5048, Rishon Letzion 75150, Israel.

87.     In 2015, the City reported to the USPS in writing that C.I.E. and various websites that C.I.E. controls, including Dutyfreedepot.com, were shipping cigarettes through the U.S. mail.

88.     Dutyfreedepot was added to the Non-Compliant List in 2015. C.I.E. was first added to the Non-Compliant List in 2015 in association with numerous websites, including

FreeTaxDepot.com, 2000Cigs.com, FreeTaxShops.com, Discountcigarettesmall.com, and Taxfree-smokes.com, to name a few.

89.     The USPS continues even today to ship cigarettes through the JFK-IMF for C.I.E. and DutyfreeDepot.com. As more fully detailed below, an audit conducted by law enforcement agencies at the JFK-IMF in April and May 2018 discovered in excess of 1600 cartons of cigarettes originating from Israel, more than 350 of which had been mailed by "C.I.E. Ltd, P.O. Box 5048, Rishon Letzion 75150, Israel," the seller previously identified by ATF in Operation Stop Sticks and identified by the City to the USPS in 2015.   The cigarettes discovered in the April and May 2018 audit were addressed to, among other places, New York City and State and New Jersey. For example, in May 2018, the USPS transported 1.79 kg (or 6 cartons) of Marlboro cigarettes for C.I.E. LTD P.O. Box 5048, Rishon Letzion Israel to a residential address in Brooklyn.

90.     A public account of the USPS's cigarettes deliveries for C.I.E is available at https://www.youtube.com/watch?v=bGWTLyny9YM; https://mobile.mako.co.il/news-law/legal-q1_2017/Article-49c331bf5552b51004.htm.   This 2017 video is a report of an investigation by an Israeli news outlet of C.I.E. and Dutyfreedepot.com, stating that C.I.E.'s owner and the CEO "enjoyed the enormous profits" from "the untaxed cigarettes business," which have "reached a million dollars a month."

91.     Through websites like Dutyfreedepot.com, C.I.E. shipped approximately 10,000 packages of cigarettes per day, and all of the cigarettes purchased on the Dutyfreedepot.com website destined for the United States, after transfer from the Israeli postal system, were transported and delivered in the United States by the USPS.

92.     Through websites like Dutyfreedepot.com, C.I.E. reportedly made a minimum of $1 million per month in revenue on duty free cigarette deliveries and has in the past generated $10 million a month.

93.     Even now, Duty Free Depot advertises on its website that it offers "the cheapest cigarettes on the market" with "over 58 different brands of cigarettes shelved online . . . that can be "delivered    to    the    USA    or    even    globally    with    shipping."    *See* https://www.dutyfreedepot.com/buy-duty-free-cigarettes.htm (last visited September 26, 2019).

94.     The USPS knows C.I.E. to be a cigarette seller, having gained that knowledge from the Stop Sticks case, from C.I.E.'s inclusion on the PACT Act Non-Compliant List, and from C.I.E. websites that advertise that they will ship cigarettes by mail.

95.     C.I.E. packages actually declare the contents as "Cigarettes" on the label outside of the package, which also lists the C.I.E.'s email address – dropship10@gmail.com – the same C.I.E. address that has appeared for years on the PACT Act Non-Compliant List.



96.     The USPS's transport of untaxed cigarettes for C.I.E. and Dutyfreedepot has continued, even after the inclusion of these entities, and their addresses, on the Non-Compliant List, even after the conviction of the U.S. and Russian associates of these entities became a matter of public record, even after the appearance of the 2017 YouTube video and even though the packages are labeled as containing cigarettes.

97.     Interviews with the addressees of packages opened during the 2018 JFK-IMF Audit, *see infra* ¶¶ 144, 148, revealed that United States consumers purchase significant quantities of untaxed cigarettes from websites associated with C.I.E., including Dutyfreedepot.com, and the USPS still delivers C.I.E. packages, which the USPS knows or has reasonable cause to believe contain cigarettes.

**F.     California's Investigations of the USPS's Cigarette Shipments**

98.     California has also documented cigarette deliveries by the USPS.

99.     In September 2012, an investigator for the California Department of Justice purchased cigarettes from Tygerpipes.com, an Internet tobacco website that sold numerous cigarettes.  The investigator placed an online order for three cartons of Esse Korea, two packs of Black Devil Brand and one pack of Supreme Slim Lights cigarettes.  On October 16, 2012, the investigator received an email from Tygerpipes.com with a USPS tracking number for the purchased cigarettes – RA616792476CN.  When the investigator entered that tracking number into the USPS online tracking system, the site advised that the USPS had "received notice that the originating post is preparing to dispatch this mail piece."  On November 8, 2012, the investigator received the package containing the ordered cigarettes, which was shipped from China to the Sacramento, California address provided at purchase.  The USPS tracking number provided by Tygerpipes.com was placed on the outside of the package.  None of the cigarettes contained in the package were affixed with the required California tax stamps.

100.    In August 2014, an investigator for the California Department of Justice purchased seven different cigarette products from seven Internet cigarette vendors: Cigarsunlimited.co.uk, Discountcigarettesmall.com, Cigarettehouse.net, Smokin4free.com, Baccycafe.com, Dutyfreedepot.com, and Freetaxshops.com/Directtaxfree.com.  All of the cigarettes were delivered by the USPS in September or October of 2014.

101.    On August 25, 2014, the investigator for the State of California placed an order for two cartons of Glamour Super Slims Menthol cigarettes on the Discountcigarettesmall.com website and paid by credit card.  On the same day, the investigator received an email from customercare@discountcigarettesmall.com advising that the order was paid successfully.  On September 8, 2014, the investigator received two cartons of Glamour Super Slims Menthol cigarettes delivered by the USPS.

102.    The website www.clovecigarettesonline.com had been placed on the Non-Compliant List on March 10, 2016. On or about December 12, 2016, an investigator for the California Department of Justice purchased one carton of Dugang Garam NesLite Black cigarettes from that website for delivery to an address in Sacramento, California.    The Clovecigarettesonline.com website advertised at the time that it offered a "large selection of both domestic clove cigarettes brands and international brand cigarettes."

103.    The "Frequently Asked Questions" portion of the Clovecigarettesonline.com website provided "PLEASE NOTE: FOR CLOVE CIGARETTE PURCHASES SHIPPED TO THE UNITED STATES: IMPORTANT: YES!! We can still export clove cigarettes to the United States.  You can safely purchase clove cigarettes from CloveCigarettesOnline.com and we GUARANTEE that you will receive your shipment!  There is no maximum limit on your order and usually no duty tax charged. You may order 1 or more cartons, as long as the cigarettes are used for personal consumption only (NOT for commercial resale)."   The "Terms and Conditions" page on the website provides: "USA customers . . . can check delivery status online at the USPS's website: http://www.usps.com/shipping/trackand confirm.htm."   The investigator for the California Department of Justice received tracking updates for the purchase from the USPS.  The tracking number was RR037578565ID.

104.    On January 5, 2017, the investigator received an email from auto-reply@usps.com with tracking updates on the package.  The email provided that the cigarette purchase was accepted and processed through a facility at Jakarta MPC, Indonesia, then processed through the USPS's international mail service center in San Francisco and had arrived at the USPS facility in West Sacramento, California.

105.    On January 6, 2017, the investigator received three emails from auto-reply@usps.com for the package: the first email showed the cigarette purchase was in transit to the final destination; the second email showed the package had arrived in Sacramento, California; and the third email showed the purchase was delivered and left with an individual in Sacramento, California.

106.    On January 9, 2017, the investigator for the California Department of Justice picked up the cigarette purchase in Sacramento, California.  The parcel was the size of a cigarette carton and wrapped in black plastic with labels affixed outside the package that contained the Sacramento mailing address, and an indication that the package contains "cigaret".

107.    On January 10, 2017, the investigator opened the parcel, which contained one plain white carton of ten packs of Peringatan Black Edition NESLITE cigarettes, wrapped together in cellophane.  None of the cigarettes were affixed with tax stamps from any state in the U.S.[7]

108.    State investigators for jurisdictions other than California and New York City have conducted undercover tobacco purchases from several online cigarette sellers and received packages of cigarettes delivered by the USPS.  Discovery of the USPS will show well over 100 instances in which the USPS was notified of the identity of cigarette sellers that had mailed cigarettes through the USPS, and which were delivered to U.S. consumers via the USPS.

---

[7] California's investigators have also demonstrated that employees and agents of the USPS are poorly trained with respect to the prohibition against cigarettes in the mails.  On September 16, 2015, an investigator for the State of California entered a USPS post office at 13308 Midland Road, Poway CA 92064, to mail a package containing at least one carton of Marlboro Gold cigarettes to a residential address in Escondido, CA.  The investigator placed the following statement in all caps below the delivery address on the mailing label: "Cigarettes/Smokeless Tobacco: Federal Law Require the Payment of All Applicable Excise Taxes and Compliance with Applicable Licensing and Tax Stamping Obligations."  The USPS employee assisting the investigator to mail the cigarette package took the package, looked at it briefly and proceeded to process the package for mailing.  The cigarette package was delivered via the USPS to the residential address in Escondido, CA.

Discovery will show that the USPS either did not respond to those notifications or acknowledged receipt but took no action.

**G.    The 2018 Audit of the USPS's John F. Kennedy International Mail Facility**

109.    To determine the volume of cigarettes transported by the USPS, investigators from the Office of the New York City Sheriff, and the California Attorney General's office performed a package audit at the USPS's JFK-IMF (the "JFK-IMF Audit") in 2018, between April 24th and 26th.  Workers of the USPS were asked to identify and gather for examination packages suspected of containing cigarettes.  Additional packages were identified by CBP.  The City and State investigators opened and documented the contents of packages, and recovered more than 36,000 cartons of cigarettes.

110.    A second audit, conducted from May 1-3, 2018, using the same methods, recovered more than 34,000 cartons of cigarettes at the JFK-IMF.

111.    A third audit, from May 8-10, 2018, recovered more than 30,000 cartons of cigarettes at the JFK-IMF.

112.    The USPS's JFK-IMF received thousands of parcels containing more than a hundred thousand cartons of cigarettes destined for 48 states nationwide during the JFK-IMF Audit.  Over a million packs of cigarettes were processed at the USPS's JFK-IMF during this nine-day period alone.

113.    The cigarettes recovered in the 2018 JFK-IMF Audit were addressed to postal patrons throughout the United States, including New York City and State, California, Massachusetts, and New Jersey.  The cigarette packages originated predominantly from Vietnam, China, and Israel, with lesser amounts from Japan, Korea, Kyrgyzstan, and Ukraine.

114.    Vietnam was the source of more than 82,000 cartons of cigarettes. The USPS transported more than 6,000 cartons for a repeat sender: "Vo Hoang Phung, Thon 2 Long Son,

Vung Tau, Vietnam," delivering them to New York City and State, California, New Jersey and Pennsylvania, among other places.

115.    More than 11,000 cartons of cigarettes discovered in the audit originated in China. The USPS delivered more than 400 cartons for a repeat sender: "Bei Zhan Lu Road No. 72, Shen YangShi, China" to, *inter alia*, New York City and State and California.

116.    The largest percentage of cigarettes from the nine-day period was destined for California.  Approximately 40,850 cartons of cigarettes bound for California were discovered during the JFK-IMF Audit, amounting to an estimated tax loss of $1,172,420.83 based on California's cigarette tax rate of $2.87 per pack.  On an annual basis, at that rate of delivery, the USPS's JFK-IMF may be delivering to California more than 600,000 cartons of cigarettes – six million packs of cigarettes – for an estimated annual tax loss of more than $19 million.

117.    The second largest percentage of cigarettes from the nine-day period was destined for New York, where approximately 33,287 cartons of cigarettes were identified in the JFK-IMF Audit, for an estimated tax loss of $1,447,984.50 to New York State.  Approximately 97% of those cigarettes were on their way to New York City, for an estimated City tax loss of $486,855.00.   On an annual basis, at that rate of delivery, the USPS's JFK-IMF may be delivering more than half a million cartons of cigarettes – five million packs of cigarettes – into New York City and State, for an estimated annual tax loss exceeding $21 million.

118.    Based on the conservative rate of 100,000 cartons of cigarettes shipped per three weeks as demonstrated by the JFK-IMF Audit, the USPS JFK-IMF alone may be annually delivering in excess of one million cartons of cigarettes - 10 million packs of cigarettes – for an estimated annual tax loss of over $50 million to states nationwide.

**H.      Additional 2019 Cigarette Deliveries by the USPS**

119.    Other examples of the USPS's unlawful transport and deliveries of cigarettes abound.

**Cigsspot.com**

120.     On February 19, 2019, an investigator from the City Sheriff's office ordered 2 cartons of Marlboro Gold and 2 cartons of Marlboro Red cigarettes from https://www.cigsspot.com/shop/.

121.    Cigspot.com is a website offering "cheap" cigarettes, which are "mostly" free of excise tax; the website provides that "there were cases when some countries asked our customers to pay the excise tax."

122.    The Cigsspot.com website also advertises that its cigarette prices are cheap because the seller is buying cigarettes from wholesalers in "poorly developed Eastern European countries," and further asks the buyer to "Please transfer payment to business@aplcellnutrition.com MAKE SURE YOU SEND IN USD (NOT EUR) Just please DO NOT write anything about cigarettes - because we can get in trouble for that."

123.    On March 27, 2019, a mail carrier for the USPS delivered 2 cartons of Marlboro Gold and 2 cartons of Marlboro Red cigarettes to the City investigator at the address in Long Island City, New York provided during the order.  None of the packs of cigarettes ordered were affixed with New York State or City Tax stamps.  The cigarettes were sent from an address in Ukraine.

124.    Below are photographs of the illegal cigarettes delivered by the USPS.





125.    Cigsspot.com has been on the Non-Compliant List since July 2018.  The USPS

accordingly has "reason to know" that Cigsspot.com ships cigarettes through the mails.

I.    **The USPS's International Mail Facilities Outside of New York**
      **Serve as the Entry Point into New York**

126.    In addition to the JFK-IMF, there are at least four other USPS International Mail Facilities outside of New York that are also entry sites for untaxed cigarettes from overseas.

127.    On or about June 20, 2019, the USPS delivered a box containing fifty (50) cartons of cigarettes shipped from a warehouse in Korea to an address in Aurora, Illinois.  The shipping label on the box was stamped "United States Postal Service" and had an EMS logo.

128.    The USPS had actual knowledge that these shipments contained cigarettes because the sender declared the contents as "Cigarettes," quantity "50" on the label outside of the package.

129.    This package of cigarettes was then re-shipped by the recipient to an address in Flushing, NY, using a common carrier.

130.    On or about the same day, the USPS delivered another box shipped from Korea, containing fifty (50) cartons of cigarettes, to an address in Romeoville, IL.  The sender again declared the contents as "Cigarettes," quantity "50" on the outside shipping label. The box of cigarettes was re-shipped by the recipient to an address in Flushing, NY, by common carrier.

131.    Both packages of cigarettes from Korea were processed at the USPS's Chicago O'Hare Airport International Mail Facility.

**VI. The USPS Return To Sender Program**

132.    Despite the substantial evidence that the USPS continues to deliver cigarettes through the mails, postal authorities have repeatedly assured federal, state and local officials that when packages of cigarettes are identified, the packages are designated "return to sender," and returned through the mails to the packages' country of origin (the "RTS Program").

133.    Instead of serving as an effective enforcement mechanism, the RTS Program obstructs the effective enforcement of and in fact violates the PACT Act's prohibition against transmitting cigarettes in the mail.  The persistence of cigarettes in the domestic mail stream is in significant part attributable to the USPS's insistence on giving packages of cigarettes back to PACT Act violators instead of confiscating and destroying offenders' cigarettes.

### A.    The USPS RTS Program is Illegal and Ineffective

134.    The USPS supports the RTS Program by asserting that returning cigarettes to PACT Act violators is more cost-effective than seizing and destroying the cigarettes. The Office of Inspector General for the USPS has noted the absence of an adequate study to support that contention. *Prohibited Mailings Rpt*. at 2.

135.    The USPS defends the legality of the RTS Program under the PACT Act by contending that the phrase "cigarettes shall be subject to seizure"[8] provides the USPS with the discretion, not the duty, to seize and destroy cigarettes.  But that view fails to harmonize the language of 18 U.S.C. § 1716E as a whole, which commands that "All cigarettes and smokeless tobacco . . . are nonmailable *and shall not be deposited in or carried through the mails*. The United States Postal Service *shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe* contains any cigarettes or smokeless tobacco made nonmailable by this paragraph."  18 U.S.C. § 1716E (a)(1) (emphasis added).[9]

---

[8] The complete language of 18 U.S.C. § 1716E(c) is that cigarettes "shall be subject to seizure and forfeiture, pursuant to the procedures set forth in chapter 46 of this title [18 USCS §§ 981 et seq.]. Section 981 provides the USPS with broad authority to seize packages containing cigarettes and transfer them to federal, state or local authorities for disposition. *See* 18 U.S.C. § 981 (a)(1)(C); § 981(b)(2).

[9] *See Mailing Standards of the United States Postal Service,* Domestic Mail Manual (DMM(R)) 601.11 ("all cigarettes (including roll-your-own tobacco) and smokeless tobacco are nonmailable and *shall not be deposited in or carried through the Postal Service mailstream. Nonmailable cigarettes and smokeless tobacco deposited in the mail are subject to seizure and forfeiture.*") (emphasis added).

136.     The contention that seizure is discretionary, and permits returning cigarettes to the sender, is inconsistent with the mandatory language that '[t]he United States Postal Service *shall not accept for delivery or transmit* [cigarettes] *through the mails*" 18 U.S.C. § 1716E(a).  As soon as cigarettes from international mailers come within the possession of the USPS, the cigarettes have been "accepted for delivery."  The return of packages to the sender – to the extent that actually occurs (*see infra* ¶¶ 140-151) – is a transmittal through the mails of packages the USPS knows contain cigarettes.

137.     The USPS asserts that returning cigarettes does not amount to "acceptance for delivery" or "transmission," because the returned items never enter the *domestic* mail system. *See Prohibited Mailings Rpt* at 11.  However, the jurisdictional boundary between cigarettes in international mail and the domestic mail posited by the USPS does not exist. Title 18, section 1692 "Foreign mail as United States mail," provides that foreign mail, while being transported across the territory of the United States is "mail of the United States," and for offense purposes is treated as though it were mail of the United States.  18 U.S.C. § 1692. Accordingly, as soon as international mail is physically located at the JFK-IMF, it is "mail of the United States," *i.e.*, domestic mail.  The USPS has accepted the package for delivery or transmits the package, even if the USPS purports to be returning the package to the sender.

138.     The RTS program runs further afoul of the PACT Act because as a practical matter the program routinely fails to keep cigarettes out of the mail, with the result that cigarettes are now and will continue to be delivered and carried through the mails, in violation of the PACT Act's non-mailability command.   The pervasive failure of the RTS Program to eliminate cigarettes from the mailstream so thwarts the PACT Act's intended purpose that to construe the USPS's seizure authority as discretionary is incompatible with the legislative intent of the Act.

139.    The failure of the RTS Program is clear.  A 2015 email from the USPS to the City (among others) attached spreadsheets showing "inbound international mailpieces . . . containing illegal cigarettes" that the USPS had identified at its international mail centers during 2014 and 2015, all of which were purportedly returned to the package senders.  Subsequently, and presumably on the basis of the information in the spreadsheets, the USPS reported to its Inspector General that between FY 2014 and FY 2016, it had discovered and returned at least 54,126 prohibited packages to international senders, of which a "significant portion" were cigarettes. *Prohibited Mailings Rpt* at 8-9.

140.    However, the 2018 JFK-IMF Audit conducted by State and local enforcement agencies discovered approximately 73,000 packages of cigarettes, in a sampling period of only nine days.  The 2018 JFK-IMF Audit thus discovered far more cigarettes in a far shorter sampling period, and from a single facility, than the USPS discovered in two years, from multiple facilities.  *See Prohibited Mailings Rpt* at 8-9. Even assuming that every one of the 54,126 packages the USPS purportedly returned during the two-year sample in the *Prohibited Mailings Rpt*. contained cigarettes, that number is far below the number of packages detected in the far shorter sampling period of the JFK-IMF Audit.  The USPS's own data suggests that the RTS Program purports to return a fraction of the cigarettes that pass through the mails in contravention of federal law.

141.    Information obtained during the JFK-IMF Audit presents a still more troubling result of the RTS Program, permitting the conclusion that the USPS in fact delivers and does not actually return to the sender packages identified as containing cigarettes. The packages of cigarettes verified as containing cigarettes by the JFK-IMF Audit were identified as such and turned over to the USPS.  According to the USPS, those packages should all have been returned

to the senders through the RTS Program. However, using the USPS's own tracking system, packages identified in the JFK-IMF Audit as containing more than a thousand cartons of cigarettes were delivered by the USPS to addressees in the U.S., *not* returned to the senders' country of origin, even though the packages had been expressly identified to the USPS as containing cigarettes.

142.    Below is an example from the USPS tracking system of a delivery to a New York City resident of a package that had been identified in the JFK-IMF Audit as containing cigarettes.



143.    Less than 150 cartons discovered in the Audit were returned, as determined through the USPS online tracking system.

144.    The number of cigarette-containing packages identified during the JFK-IMF Audit but delivered to the package addressees may be far greater than revealed by the tracking system.  The great majority of cigarette-containing packages identified in the JFK-IMF Audit are designated in the USPS tracking system as "in transit" or "status unknown"; whether they were delivered or returned to their senders cannot be determined.  That "unknown" designation has persisted for as long as a full year following the identification of the package in the Audit.

145.    Although their ultimate disposition cannot be determined, the available evidence suggests that at least some portion of the packages designated "in transit/status unknown" were delivered to their addressees.  In interviews that the New York City Sheriff's Office conducted with addressees of packages listed as "in transit/status unknown," the interviewees explained that they "always" received the cigarettes they purchased on-line.  Thus, the USPS tracking system – which failed to identify the final delivery status of many known packages of cigarettes – may well underrepresent the number of identified cigarette packages that were subsequently delivered, not returned to sender.

146.    Tracking packages identified as containing cigarettes at the USPS international mail facility at San Francisco, California through the USPS on-line tracking system yields a similar result: hundreds of packages identified as containing cigarettes were delivered throughout the U.S. and not returned, and the ultimate disposition of most packages of cigarettes – whether returned or delivered – cannot be determined from the tracking system.

147.    Even apart from the USPS's failure to return identified packages of cigarettes to senders, the RTS Program has an inherent economic flaw that predicts the program's ineffectiveness. A package returned to the sender merely provides cigarette shippers with a second, largely cost-free opportunity to re-mail the cigarettes to their customers – an opportunity

cigarette shippers readily embrace.  For example, in the Israeli media video concerning C.I.E., supra, ¶ 90, a C.I.E. representative states that C.I.E. and DutyFreeDepot.com "ship a lot of shipments through [the] USPS," some of which get returned to C.I.E.  The C.I.E. representative reports that the company simply re-mails the cigarettes to customers.  According to the C.I.E. representative, "It's a game we play with [the] USPS."

148.    Cigarette sellers build the RTS Program into their business model by offering "replacement guarantees."  The USA001.com website for example assures customers that if their order is "caught" by U.S. Customs, the company will re-ship the product to the customer:  "We promise: if packages return back or caught by the US Customs, we will reship the packages back."

149.    The "game" played by C.I.E. or the "promise" offered by USA001.com to replace seized cigarettes was noted in interviews of addressees of cigarette packages identified in the 2018 JFK-IMF Audit.  Some purchasers reported that when they did not receive their cigarettes, they notified the cigarette seller, who simply shipped the customer a new cigarette order, which escaped detection on the second attempt.

150.    Returning cigarettes to senders is a far less effective economic deterrent than seizure and destruction.  Returning the intact product affords the sender another opportunity to re-send the package, at a cost to the sender of at most another postal fee, without actually losing any contraband product.  The RTS Program imposes nothing more serious on a buyer than a delay in the receipt of their cigarettes.  By contrast, seizure and destruction imposes substantial costs on the party bearing the loss of the seized cigarettes.  A buyer or seller that has paid for cigarettes that are seized and destroyed is far more likely to respond to that economic sanction by permanently ending purchases or sales through the USPS.

151.    The USPS's claim of greater cost-effectiveness of the RTS Program very likely does not address the fact that in the long term, the Program allows whatever economic burdens that are imposed on the USPS by the Program to extend into the future, rather than definitively ending the use of the mails to ship commercial quantities of cigarettes.

152.    The USPS Inspector General has pointed out to the USPS this very flaw in the RTS Program: "Returning these prohibited international mailings may not sufficiently deter mailers from trying to send prohibited items into the U.S. – a condition that could negatively impact the Postal Service's brand and image and could increase the risk that the items will re-enter the mailstream without detection." *Prohibited Mailings Rpt* at 2, 8, 12.

153.    The USPS Inspector General concluded that "The Postal Service needs to improve its processes for handling prohibited inbound international mailings." *Prohibited Mailings Rpt* at 8.

154.    The USPS Inspector General noted the USPS's policies "are relatively vague," including as it relates to coordinating with foreign postal operators when significant numbers of prohibited mailings are coming from those respective countries. *Prohibited Mailings Rpt* at 2, 8.

155.    The USPS Inspector General found that the USPS's policy does not provide clear guidance on how [controlled substances like cigarettes] should be handled." *Prohibited Mailings Rpt.* at 11.  Further, the USPS's Handbook T-5 on International Mail Operations "does not include references for specific processes or procedures for handling . . . prohibited mailings," such as cigarettes. *Id.*

### B.    Contraband *Per Se*

156.    All or virtually all of the cigarettes that are present in the mails are "contraband cigarettes" as defined by the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.*, ("CCTA"), which provides that it is unlawful to knowingly ship, transport, receive, possess, sell,

distribute, or purchase "contraband cigarettes," defined as more than 10,000 cigarettes (*i.e.*, more than 50 cartons or 500 packs of cigarettes) found in a jurisdiction without that jurisdiction's cigarette tax stamps affixed to them.  18 U.S.C. § 2341(2); 18 U.S.C. § 2342(a).

157.    The more than 10,000 unstamped cigarettes required for cigarettes to be deemed contraband need not be handled in a single transaction, but may consist of cigarettes handled in aggregated transactions.  *City of New York v. FedEx Ground Package Sys., Inc.*, 91 F. Supp. 3d 512, 520–21 (S.D.N.Y. 2015) (unrelated deliveries of fewer than 10,000 cigarettes could be "aggregate[d]" for purposes of determining whether the CCTA's 10,000-cigarettes threshold has been crossed); *see also City of New York v. LaserShip, Inc.*, 33 F Supp. 3d 303, 313 (S.D.N.Y. 2014); *City of New York v. Gordon*, 1 F. Supp. 3d 94, 105 (S.D.N.Y. 2013).

158.    The RTS Program conducted by the USPS is inconsistent with the legal status of unstamped cigarettes, which are defined as contraband *per se* to which no one is entitled to possession. No person is legally entitled to receive packages of unstamped cigarettes found in the mails and the packages accordingly may not be returned to their senders.

159.    An item is "contraband *per se* if its possession, without more, constitutes a crime; if there is no legal purpose to which the object can be put. *Sash v. United States*, 2009 U.S. Dist. LEXIS 90866, at *11 (S.D.N.Y. Sep. 22, 2009) (quoting *United States v. Harrell*, 530 F.3d 1051, 1057 (9th Cir. 2008).  Contraband *per se* "include[s] items that are intrinsically illegal." *Awan v. United States*, 2014 U.S. Dist. LEXIS 46472, at *9 (E.D.N.Y. Mar. 31, 2014) (citing *United States v. Rodriguez—Aguirre*, 264 F.3d 1195, 1212 n.13 (10th Cir. 2001)).

160.    With exceptions inapplicable here, cigarettes possessed without evidence of payment of taxes are "contraband *per se*," because they are inherently unlawful, *i.e.*, they are "unlawful goods."  *United States v. Hasan*, 718 F.3d 338, 346 (4th Cir. 2013).  Contraband

cigarettes can never be sold lawfully because possession itself violates the CCTA. *United States v. Maddux*, 229 F. Supp. 3d 591 (E.D. Ky 2017).

161. As "contraband *per se*," no person has a property right in the cigarettes. Courts will not entertain claims contesting confiscation of contraband *per se*, because there is no property right in items that are not subject to legal possession. *Cooper v. Greenwood*, 904 F.2d 302, 305 (5th Cir. 1990)). Thus, in addition to the express authority granted by the PACT Act to seize and forfeit cigarettes within the mail stream, contraband cigarettes within the mails, as contraband *per se*, may be seized and confiscated by law enforcement pursuant to 18 U.S.C. § 984.

### VII. Postmaster General Megan Brennan's Acts Are *Ultra Vires*

162. The Postmaster General is the Chief Executive Officer of the USPS. 39 U.S.C. § 203.

163. The PACT Act provides that "the United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes." 18 U.S.C. § 1716E(a).

164. Accordingly, the Postmaster General's operation of the USPS to accept cigarettes for delivery or transmit through the mails packages that the USPS knows or has reasonable cause to believe contain cigarettes, as described above, violates a clear statutory mandate and constitutes conduct that is *ultra vires* of the Postmaster General's authority.

### FIRST CLAIM FOR RELIEF

### Violation of the PACT Act (18 U.S.C. § 1716E)

165. Plaintiffs reallege paragraphs 1-164 above as if fully set forth herein.

166.    The PACT Act provides that "the United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes." 18 U.S.C. § 1716E(a).

167.    Beginning in June 30, 2010, and continuing to the present, the USPS has accepted for delivery or transmitted through the mails tens of thousands of packages that the USPS knows or has reasonable cause to believe contain cigarettes that may not be transmitted through the mails pursuant to 18 U.S.C. § 1716E.

168.    The USPS knows or has reasonable cause to believe that it is accepting cigarettes for delivery or transmitting them through the mail, *inter alia*, because the packages state they contain cigarettes, or the packages can be readily recognized by postal employees as containing cigarettes.

169.    The USPS knows or has reasonable cause to believe that it is accepting cigarettes for delivery or transmitting them through the mail because it handles packages from cigarette sellers that advertise the shipment of cigarettes through the mail.

170.    The USPS knows or has reasonable cause to believe that it is accepting cigarettes for delivery or transmitting them through the mail because some delivery-sellers for which the USPS makes deliveries are listed on the Non-Compliant List maintained by the Attorney General of the United States.

171.    The USPS knows or has reasonable cause to believe that it is accepting cigarettes for delivery or transmitting them through the mail because delivery-sellers for which it makes deliveries have been previously identified to the USPS as sellers of cigarettes through the mails.

172.    Since June 30, 2010, and continuing through the present, the USPS has accepted for delivery or transmitted through the mail tens of thousands of packages that the USPS knows

or reasonably believes contain cigarettes, because the packages state that they contain cigarettes, are readily recognized by postal employees as containing cigarettes, are from cigarette sellers that advertise the shipment of cigarettes through the mail, are for delivery-sellers listed on the Non-Compliant List, or are for delivery-sellers previously identified to the USPS as sellers of cigarettes through the mail.

173.    The USPS's deliveries and transmissions through the mails of packages that it knows or reasonably believes contain cigarettes violates 18 U.S.C. § 1716E.

174.    As a direct result of the USPS's violations of the PACT Act, Plaintiffs have suffered irreparable injury and money damages.

175.    Pursuant to 18 U.S.C. § 1716E(h)(1), a local or State government that levies an excise tax on tobacco products may in a civil action in a United States district court obtain appropriate relief with respect to a violation of the PACT Act's non-mailability provision.  Such relief includes injunctive and equitable relief, and damages equal to the amount of unpaid taxes on tobacco products mailed to addressees in the jurisdiction.  18 U.S.C. § 1716E (h)(1).

## SECOND CLAIM FOR RELIEF

### Declaratory Judgment Pursuant to 28 U.S.C. § 2201

176.    Plaintiffs repeat and reallege paragraphs 1-175 as if fully set forth herein.

177.    Plaintiffs seek relief under 28 U.S.C. § 2201 to declare and settle the rights and obligations of the parties.

178.    Plaintiffs seek a judgment declaring that the USPS is violating the PACT Act by accepting and transmitting packages through the mails that the USPS knows or reasonably believes contains cigarettes.

179.    Plaintiffs seek a judgment declaring that the USPS is violating the PACT Act by returning cigarettes found in the mail to the sender of those cigarettes.

180.    Plaintiffs seek a judgment declaring that unstamped cigarettes transported, received, possessed, or distributed by the USPS are contraband *per se*.  When cigarettes are possessed without bearing evidence of the payment of taxes in the jurisdiction in which the cigarettes are found, the cigarettes are "contraband *per se*," *i.e.*, there is no legal basis for the possession of the cigarettes and the cigarettes are not the property of anyone.

181.    Plaintiffs seek a judgment declaring that contraband cigarettes may be seized by law enforcement pursuant to 18 U.S.C. § 984.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Writ of Mandamus Pursuant to 28 U.S.C. § 1361**

182.    Plaintiffs repeat and reallege paragraphs 1-181 as if fully set forth herein.

183.    The PACT Act provides a clear, unambiguous mandate that "the United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes." 18 U.S.C. § 1716E(a).

184.    Pursuant to 18 U.S.C. § 1716E(h)(1), a local or State government that levies an excise tax on tobacco products has the right to obtain appropriate relief regarding the USPS's violation of the PACT Act's cigarette non-mailability provision.

185.    The Postmaster General's operation of the USPS to accept cigarettes for delivery or transmit through the mails packages that the USPS knows or has reasonable cause to believe contain cigarettes violates an unambiguous statutory mandate and constitutes conduct that is *ultra vires* of the Postmaster General's authority.

186.    Plaintiffs seek relief under 28 U.S.C. § 1361 for an order compelling the Postmaster General to comply with the non-discretionary duty in the PACT Act that the USPS not accept for delivery or transmit packages through the mails that the USPS knows or reasonably believes contain cigarettes.

**WHEREFORE**, Plaintiffs respectfully pray that the Court grant judgment against the United States Postal Service and Postmaster General Megan Brennan as follows:

a. On the First Claim For Relief, enjoin the USPS from accepting for delivery or transmitting through the mails any package that the USPS knows or has reasonable cause to believe contains cigarettes made non-mailable pursuant to 18 U.S.C. Section 1716E (a), including but not limited to packages from i) those sellers on the Non-Compliant List; and ii) those sellers advertising shipment by U.S. mail and/or EMS;

b. On the First Claim of Relief, enjoin the USPS from returning packages containing cigarettes to the senders because by doing so, the USPS is accepting or transmitting through the mails packages it knows or reasonably believes contain cigarettes, in violation of the PACT Act;

c. On the First Claim For Relief, award Plaintiffs suitable monetary relief as provided for under 18 U.S.C. § 1716E;

d. On the Second Claim For Relief, pursuant to 28 U.S.C. § 2201, declare that unstamped cigarettes in the possession of the USPS are contraband *per se*, which may be seized and destroyed in conformity with 18 U.S.C. § 984;

e. On the Second Claim For Relief, pursuant to 28 U.S.C. § 2201, declare that the USPS is violating the PACT Act by accepting and transmitting packages through the mails that the USPS knows or reasonably believes contains cigarettes.

f.     On the Second Claim For Relief, pursuant to 28 U.S.C. § 2201, declare that the USPS is violating the PACT Act by returning cigarettes found in the mail to the sender of those cigarettes;

g.     On the Second Claim For Relief, pursuant to 28 U.S.C. § 2201, declare that the Postmaster General's operation of the USPS to accept for delivery or transmit through the mails packages that the USPS knows or has reasonable cause to believe contain cigarettes violates a clear statutory mandate and is *ultra vires* of her authority;

h.     On the Third Claim for Relief, pursuant to 28 U.S.C. § 1361, order the Postmaster General to comply with the non-discretionary and mandatory duty in the PACT Act that the USPS not accept for delivery or transmit packages through the mails that the USPS knows or reasonably believes contain cigarettes; and

i.     Award such other and further relief as the Court may deem appropriate.

Dated:  New York, New York
        October 22, 2019


                              GEORGIA M. PESTANA
                              Acting Corporation Counsel of the
                                City of New York


                        By:   /s/ Eric Proshansky
                              Eric Proshansky (EP 1777)
                              Hope Lu (HL 6934)
                              Assistant Corporation Counsel
                              100 Church Street, Room 20-99
                              New York, New York 10007
                              (212) 356-2032
                              EProshan@law.nyc.gov
                              HLu@law.nyc.gov
                              *Attorneys for Plaintiff*
                              *The City of New York*


                              XAVIER BECERRA
                              Attorney General of California

                        By:   /s/ Laura Kaplan
                              Laura Kaplan*
                              Lesya Kinnamon*
                              Deputy Attorneys General
                              P.O. Box 944255
                              Sacramento, CA 94244-2550
                              (916) 210-6093
                              Laura.Kaplan@doj.ca.gov
                              Lesya.Kinnamon@doj.ca.gov
                              *Attorneys for Plaintiff*
                              *State of California*


                              *Application for admission *pro hac vice*
                              forthcoming