UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                          :
CITY OF NEW YORK, STATE OF                                :
CALIFORNIA, STATE OF ILLINOIS, STATE                      :
OF CONNECTICUT, and                                       :    **MEMORANDUM**
COMMONWEALTH OF PENNSYLVANIA,                             :    **DECISION AND ORDER**
                                                          :
                    Plaintiffs,                           :    19-cv-5934 (BMC)
                                                          :
              -against-                                   :
                                                          :
UNITED STATES POSTAL SERVICE and                          :
LOUIS DeJOY, in his official capacity as                  :
Postmaster General,                                       :
                                                          :
                    Defendants.                           :
--------------------------------------------------------- X

**COGAN**, District Judge.

The Prevent All Cigarette Trafficking Act of 2009, known as the "PACT Act," seeks to

prevent cigarette traffickers from evading state and federal law by shipping cigarettes through

the mail.  It thus provides that the United States Postal Service "shall not accept for delivery or

transmit through the mails any package that it knows or has reasonable cause to believe contains

any cigarettes."  18 U.S.C. § 1716E(a)(1).  Four states and the City of New York ("plaintiffs")

allege that the Postal Service has not fulfilled that obligation.  They have sued the Postal Service

and the Postmaster General (collectively, "defendant"),[1] seeking (1) damages and injunctive

relief for violations of the PACT Act, (2) a declaratory judgment that defendant has violated the

Act and that "contraband cigarettes" are "contraband *per se*" under civil forfeiture statutes, and

---

[1] Having succeeded Megan Brennan as Postmaster General, Louis DeJoy should be substituted under Federal Rule
of Civil Procedure 25(d).  The Clerk is directed to amend the docket sheet accordingly.

(3) a writ of mandamus compelling defendant to comply with the Act.  Defendant has moved to dismiss.

I conclude that plaintiffs have stated a claim under the PACT Act and can seek a declaratory judgment that defendant has violated the Act.  Yet plaintiffs cannot seek a declaratory judgment that contraband cigarettes are contraband *per se*.  This claim not only lacks an actual case or controversy; plaintiffs also lack standing to bring it.  Finally, I lack jurisdiction over the mandamus claim because the PACT Act provides an adequate remedy.  The motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I.    The PACT Act

It seems a truism that wherever there are taxes, there will be tax evaders, and the higher the tax, the greater the opportunities for evasion.  This case reflects an effort by certain high-tax jurisdictions to prevent low-tax jurisdictions, and less indirectly to prevent third parties who purchase from these low-tax jurisdictions, from using the Postal Service to profit from the spread between the higher and lower taxes.

Congress passed the PACT Act to address the "increasing problem" of tobacco smuggling in the United States.  H.R. Rep. No. 111-117, at 18 (2010).  With existing laws inadequate in "the Internet age," smugglers could circumvent state and federal laws by selling over the internet and through the mail.  Id.  Smugglers would purchase cigarettes in a low-tax state (say, Virginia) and resell them in a high-tax state (here, New York), pocketing the difference.  See, e.g., United States v. Hasan, 718 F.3d 338, 340 (4th Cir. 2013).  The practice spawned "three evils: tobacco sales to minors, illicit cigarette trafficking, and circumvention of state taxation requirements."  Gordon v. Holder, 721 F.3d 638, 642 (D.C. Cir. 2013) (alteration adopted) (quotation omitted).  To address these problems, Congress imposed new restrictions on

"delivery sales" – *i.e.*, sales that do not involve face-to-face transactions.  Pub. L. No. 111-154, § 2(a), 124 Stat. 1087, 1088–89 (2010).  These sales must now comply with excise taxes, licensing and tax-stamping requirements, restrictions on sales to minors, and other legal requirements "as if the delivery sales occurred entirely within the specific state and place" where the cigarettes are delivered.  Id. § 2(b), 124 Stat. at 1091; see also New York v. United Parcel Serv., Inc., 942 F.3d 554, 565–66 (2d Cir. 2019) (detailing the specific requirements).

The PACT Act also imposed new restrictions on the Postal Service.  Now codified in 18 U.S.C. § 1716E, these provisions, subject to exceptions not applicable here, see § 1716E(b), banned the Postal Service from shipping cigarettes:

> All cigarettes and smokeless tobacco (as those terms are defined in section 1 of the Act of October 19, 1949, commonly referred to as the Jenkins Act) are nonmailable and shall not be deposited in or carried through the mails.  The United States Postal Service shall not accept for delivery or transmit through the mails any package that it knows or has reasonable cause to believe contains any cigarettes or smokeless tobacco made nonmailable by this paragraph.

§ 1716E(a)(1).  The Act defines "reasonable cause" as "a statement on a publicly available website, or an advertisement, by any person that the person will mail matter which is nonmailable under this section in return for payment" or "the fact that the person is on the list created under section 2A(e) of the Jenkins Act."  § 1716E(a)(2).  Plaintiffs call this list the "Non-Compliant List," for it contains the names of "unregistered or noncompliant delivery sellers."  15 U.S.C. § 376a(e)(1)(a).  The Attorney General compiles the list and distributes it to the Postal Service.  Id.

## II.  The Alleged Violations

Generally speaking, plaintiffs allege two distinct violations of the PACT Act.  First, they claim that defendant regularly "accept[s] for delivery" and "transmit[s] through the mails" packages that it knows or has reasonable cause to believe contain cigarettes.  Soon after the Act's

passage, plaintiffs explain, most domestic cigarette sellers ceased delivering cigarettes through the mail.  Yet international sellers continued undeterred.  The International Mail Facility at John F. Kennedy International Airport became a focal point.  There, the Postal Service regularly received shipments from sellers on the Non-Compliant List.  The Postal Service received notice of these shipments after investigations by cigarette manufacturers, state and local governments, and federal agencies.  But the Deputy Postmaster General told field personnel not to "[i]nvestigate or seek information about the [the Non-Compliant List]" or "[i]nvestigate a customer's advertising" to "determin[e] whether the customer is mailing cigarettes."  These tasks would "be reserved for specially designated personnel."  The Postal Service never designated any such personnel, plaintiffs allege.  Instead, it did "little or nothing when confronted with large shipments of cigarettes found within the mails."  Plaintiffs allege that the Postal Service continues to deliver these shipments throughout the country.

For the second violation, plaintiffs point to the "Return to Sender Program."  The Postal Service's Inspector General detailed this program in a special report.[2]  It describes the Postal Service's view that unspecified "laws, regulations, and policies" regarding "prohibited international mailings" are "ambiguous and open to interpretation – particularly those related to how these items should be handled."  Instead of seizing these items, the Postal Service returns them to their country of origin, as this is the "the most cost[-]effective method of disposal."

The report is somewhat candid about the costs.  It states that the program "may not sufficiently deter mailers from trying to send prohibited items into the U.S.," which may "increase the risk that the items will re-enter the mailstream without detection."  That effect

---

[2] Prohibited Inbound International Mailings, Rpt. No. MS-AR-17-008, USPS OFFICE OF THE INSPECTOR GEN. (July 18, 2017), available at https://www.uspsoig.gov/sites/default/files/document-library-files/2017/MS-AR-17-008.pdf.

could "negatively impact the Postal Service's brand and image."  Plaintiffs agree with these last few points.  They brand the Return to Sender Program as "[i]llegal and [i]neffective," arguing that the PACT Act requires the Postal Service to seize and destroy cigarettes.

Plaintiffs contend that these ongoing violations have hampered their efforts to collect taxes and safeguard public health.  They represent several high-tax jurisdictions, and they allege that the Postal Service has diverted millions of dollars in tax revenue per year to low-tax jurisdictions.  Plaintiffs bring claims for (1) damages and injunctive relief under the PACT Act, (2) a declaratory judgment that defendant has violated the Act and that so-called "contraband cigarettes" are "contraband *per se*" under civil forfeiture statutes, and (3) a writ of mandamus compelling defendant to comply with the PACT Act and to end the Return to Sender Program.

Defendant wants the complaint dismissed in its entirety.  It first contends that the PACT Act does not provide a cause of action against the Postal Service.  Even if plaintiffs have a cause of action, defendant continues, plaintiffs have not adequately alleged a violation.  Next, defendant argues that plaintiffs lack standing to seek a declaratory judgment that contraband cigarettes are contraband *per se*.  Last, defendant maintains that plaintiffs have not satisfied the requirements for the mandamus claim.

## DISCUSSION

I.     **The PACT Act Claim**

A.     **The Cause of Action**

The Postal Service is an "independent establishment of the executive branch" that enjoys federal sovereign immunity.  Dolan v. USPS, 546 U.S. 481, 483 (2006) (quoting 39 U.S.C. § 201).  But the immunity is not absolute.  FDIC v. Meyer, 510 U.S. 471 (1994), and USPS v. Flamingo Industries (USA) Ltd., 540 U.S. 736 (2004), outline a two-step framework for determining when a plaintiff can sue the Postal Service.  The first step asks whether the

Government has waived sovereign immunity.  Flamingo Indus., 540 U.S. at 743.  The parties

seem to agree that it has, and it appears to have done so in almost any case against the Postal

Service.  In Flamingo Industries, the Supreme Court held that the Postal Reorganization Act

of 1970 "waives the immunity of the Postal Service from suit by giving it the power 'to sue and

be sued in its official name.'"  540 U.S. at 741 (quoting 39 U.S.C. § 401).[3]

The real dispute is at the second step, which asks whether the "substantive prohibitions"

of the act in question apply to an "independent establishment of the [e]xecutive [b]ranch."  Id.

at 743; see also Meyer, 510 U.S. at 484.  "An absence of immunity does not result in liability if

the substantive law in question is not intended to reach the federal entity."  Flamingo Indus., 540

U.S. at 743 (holding that the Sherman Act did not apply to the Postal Service).  Therefore, I must

look to the PACT Act's text, and if not clear, its structure, to determine whether "the substantive

. . . liability defined by the statute" extends to the Postal Service.  Id.

The text strongly suggests that it does.  Start with § 1716E(a)(1).  It bars the Postal

Service from "accept[ing] for delivery or transmit[ting] through the mails any package that it

knows or has reasonable cause to believe contains any cigarettes."  Then, in § 1716E(h)(1), the

Act provides a cause of action "with respect to a violation of this section":

> A State, through its attorney general, or a local government or Indian tribe that
> levies an excise tax on tobacco products, through its chief law enforcement
> officer, may in a civil action in a United States district court obtain appropriate
> relief with respect to a violation of this section.  Appropriate relief includes
> injunctive and equitable relief and damages equal to the amount of unpaid taxes

---

[3] As the Supreme Court explained in Thacker v. Tennessee Valley Authority, 139 S. Ct. 1435 (2019), a sue-and-be-sued clause may contain an implied exception.  See id. at 1441 (discussing Fed. Hous. Admin. v. Burr, 309 U.S. 242, 245 (1940)).  Defendant does not mention any implied exception in its motion to dismiss.  In reply, it seems to make that concession explicit, stating, "[T]he question is not sovereign immunity."  Just two pages later, however, defendant suggests that it has "retained" immunity under the implied exception for "avoid[ing] grave interference with the performance of a governmental function."  Id. (quoting Burr, 309 U.S. at 245).  I reject this untimely argument as inconsistent with Thacker and Flamingo Industries.  Both cases held that sue-and-be-sued clauses did not contain an implied exception, and defendant has not pointed to any cases suggesting that one exists here.

on tobacco products mailed in violation of this section to addressees in that State, locality, or tribal land.

It does not take much to read these sections together.  If the Postal Service can violate the Act, and plaintiffs have a cause of action "with respect to a violation," then plaintiffs can sue the Postal Service.

The statutory structure reinforces that conclusion.  Crucially, the PACT Act provides not just one, but two, causes of action.  The second appears in 15 U.S.C. § 378(c)(1)(A):

> A State, through its attorney general, or a local government or Indian tribe that levies a tax subject to section 376a(a)(3) of this title, through its chief law enforcement officer, may bring an action in a United States district court to prevent and restrain violations of this chapter by any person or to obtain any other appropriate relief from any person for violations of this chapter, including civil penalties, money damages, and injunctive or other equitable relief.

In short, § 378(c)(1)(A) provides a cause of action for "violations of this chapter by any person," while § 1716E(h)(1) provides a cause of action "with respect to a violation of this section."

The different language has different effect.  The key difference is that § 1716E(h)(1) does not state *who* must violate the statute to be subject to suit.  It applies only "with respect to a violation."  When a statute specifies an act, but not the actor, courts have inferred an "agnosticism" as to the actor's identity – all that matters is whether the act occurred.  <u>Dean v. United States</u>, 556 U.S. 568, 572 (2009) (quoting <u>Watson v. United States</u>, 552 U.S. 74, 81 (2007)).  Section 1716E(h)(1) shares that same agnosticism.  It cares only that a violation occurred, not who committed that violation.

In contrast, § 378(c)(1)(A) does specify who must commit the violation to be subject to suit: a "person."  That term typically "does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it."  <u>Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund</u>, 500 U.S. 72, 82–83 (1991) (alterations adopted) (quoting <u>Will v. Mich. Dept. of State Police</u>, 491 U.S. 58, 64 (1989)).  The Postal Service therefore is not a "person" under

7

various statutes.  See Flamingo Indus., 540 U.S. at 745 (Sherman Act); Thompson v. United States, 795 F. App'x 15, 19 (2d Cir. 2019) (summary order) (Visual Artists Rights Act).  So by using the term "person" in § 378(c)(1)(A), Congress likely did not intend its cause of action to reach the Postal Service.  It follows that by omitting the term in § 1716E(h)(1), Congress likely intended the opposite result.

Indeed, if § 1716E(h)(1) did *not* reach the Postal Service, it would reach the same range of defendants as § 378(c)(1)(A).  That reading would all but erase the word "person," violating the "so-called surplusage canon – the presumption that each word Congress uses is there for a reason."  Advoc. Health Care Network v. Stapleton, 137 S. Ct. 1652, 1659 (2017); see also United Parcel Serv., 942 F.3d at 582 (applying that canon to a different section of the PACT Act).

All that seems simple enough, yet defendant strenuously resists this interpretation.  Quite tellingly, it avoids the statutory language above.  It instead would have me look anywhere else.  It first stresses what the statute does not contain – a passage naming the Postal Service as a potential defendant.  But § 1716E(h)(1) does not explicitly identify *any* potential defendants.  If the cause of action reaches only those who it expressly names, it would reach no one, a plainly absurd result.  See, e.g., New York v. Mountain Tobacco Co., 942 F.3d 536, 547 (2d Cir. 2019) (applying that general principle to a different section of the PACT Act).

Defendant nonetheless insists that plaintiffs are seeking an "implied" cause of action.  There is nothing to imply, however – the Act provides an express cause of action.  See generally Alexander v. Sandoval, 532 U.S. 275, 286–87 (2001).  The only question is whether that cause of action reaches the Postal Service.  The proper framework for answering that question comes from Meyer and Flamingo Industries, two cases defendant largely ignores.

In truth, defendant wants an implied exception.  It reads the statute as saying, "A State, . . . or a local government . . . may in a civil action in a United States district court obtain appropriate relief with respect to a violation of this section, *except against the Postal Service*." That reading runs afoul of the general rule that a court "may not narrow a provision's reach by inserting words Congress chose to omit."  Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1725 (2020).  There is no "such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule."  Bostock v. Clayton Cty., 140 S. Ct. 1731, 1747 (2020).  Here, Congress provided a broad rule "with respect to a violation."  There is no textual basis for an exception.

At this point, defendant offers only diversions.  The first is § 1716E(g).  That subsection requires the Postmaster General to "cooperate and coordinate efforts to enforce this section with related enforcement activities of any other Federal agency or agency of any State, local, or tribal government, whenever appropriate."  If the PACT Act requires cooperation with state and local governments, defendant argues, it could not possibly allow those governments to sue the Postal Service.  But this section merely requires the Postal Service to cooperate with local governments, not the other way around.  It says nothing about what plaintiffs can and cannot do by way of litigation.

Defendant's next argument abandons this section altogether.  Defendant suggests that a statute in Title 18 could not contain a cause of action against the Postal Service, because that title addresses "Crimes and Criminal Procedure."  But Congress made clear that "*all* provisions of [T]itle 18 dealing with the Postal Service" apply to the Postal Service.  39 U.S.C. § 410(b)(2) (emphasis added).  And Title 18 contains several causes of action, some of which expressly

exclude the United States.  See, e.g., 18 U.S.C. § 2520(a).  If Congress had intended this cause of action to have a similar exception, it knew how to do so and could have done so expressly.  See Touche Ross & Co. v. Redington, 442 U.S. 560, 572 (1979).

Finally, defendant makes a halfhearted gesture toward legislative history.  Quoting a House committee report, it asserts that § 1716E(h)(1) only makes a "delivery seller who violates [the mailing] prohibition . . . subject . . . to any unpaid taxes."  H.R. Rep. No. 111-117, at 26 (2010) (alteration and omissions in defendant's filing).  Putting aside the hazard of relying on legislative history when the text and context of a statute are clear, see Lamie v. U.S. Tr., 540 U.S. 526, 539 (2004), the entire quote tells a different story:

> Sec. 3.  Treatment of Cigarettes and Smokeless Tobacco as Nonmailable Matter.  Section 3 of the bill amends 18 U.S.C. [§] 1716 to add cigarettes and smokeless tobacco to the list of materials, including alcohol, poisons, weapons, and other materials, that are non-mailable matter.  This would make it illegal for delivery sellers to deposit tobacco products in the U.S. mails, and it would prohibit the U.S. Postal Service from accepting for delivery, or delivering, packages its employees know or have reason to believe contain cigarettes or smokeless tobacco.  A delivery seller who violates this prohibition is subject to a fine of as much as ten times the retail value of the cigarettes or smokeless tobacco in question, in addition to any unpaid taxes, as well as imprisonment of up to 1 year.  There is an exception for mailing cigarettes for purposes of consumer testing.

Id.

As the full quote shows, defendant makes too much of too little.  True, the committee report does not explicitly mention a cause of action against the Postal Service, but it does not mention several other forms of relief that the text of the statute makes available.  For instance, the report says nothing about injunctive relief against a delivery seller, but no one could dispute that the Act allows that relief.  So too here.  The committee report cannot narrow the text of the statute.  See Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 621 (1991) (Scalia, J., concurring in the judgment) ("[W]e are a Government of laws, not of committee reports.").

In fact, relief against the Postal Service is consistent with the legislative history.  As other courts have observed, the legislative record "shows that in light of the commitments made by UPS, Federal Express and DHL prior to the PACT Act's enactment, the statute was aimed primarily at eliminating deliveries of illegal, untaxed cigarettes by the U.S. Postal Service."  New York v. United Parcel Serv., Inc., 131 F. Supp. 3d 132, 142 (S.D.N.Y. 2015) (quoting 156 Cong. Rec. H1526-01, 2010 WL 956208, at *27 (March 17, 2010) (statement of Rep. Weiner, House sponsor of the PACT Act) ("There's only one common carrier that today still delivers tobacco through the mail – the United States Postal Service.")).

In the end, defendant is left with the vague, unsupported contention that Congress could not possibly have foreseen that plaintiffs could sue the Postal Service.  The text of the statute compels the rejection of this argument.  And even if defendant were correct, "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79 (1998).  Therefore, § 1716E(h)(1) provides a cause of action against the Postal Service.

### B.     The Alleged Violation

Defendant also argues that plaintiffs have not adequately alleged a PACT Act violation. To recall, there are two separate allegations: (1) that defendant delivers large international shipments of cigarettes across the United States and (2) that defendant follows the Return to Sender Program instead of seizing and destroying cigarette shipments.

Defendant largely ignores the first theory, opting to emphasize its successes.  In defendant's telling, the Postal Service "has undertaken significant measures to enforce the PACT Act," intercepting "thousands of cigarette packages" per year.  With such "significant and successful enforcement efforts," the argument goes, plaintiffs cannot plausibly allege a violation.

But beneath these empty phrases is simply an issue of fact.  The complaint contains numerous, detailed allegations as to how the Postal Service accepts for delivery and transmits through the mails packages that it knows or has reasonable cause to believe contain nonmailable cigarettes.  I must accept those well-pleaded factual allegations as true.  See, e.g., United Parcel Serv., 131 F. Supp. 3d at 136–37.  The first theory adequately alleges a violation of § 1716E(a)(1).

The harder question is whether the Return to Sender Program also violates § 1716E. Both sides point to paragraph (c), which provides:

> Any cigarettes or smokeless tobacco made nonmailable by this subsection that are deposited in the mails shall be subject to seizure and forfeiture, pursuant to the procedures set forth in chapter 46 of this title.  Any tobacco products seized and forfeited under this subsection shall be destroyed or retained by the Federal Government for the detection or prosecution of crimes or related investigations and then destroyed.

18 U.S.C. § 1716E(c).  The contested question is whether this language is mandatory.  Plaintiffs contend that it requires the Postal Service to seize cigarettes.  Defendant insists that the duty is merely discretionary.

Contrary to the parties' contentions, the text does not speak for itself.  It melds the mandatory-sounding "shall" with the more permissive-sounding "subject to."  Similar language in other statutes has led courts to conflicting conclusions.[4]  Even putting aside those conflicts, the cases are of limited value, for phrases do not inevitably share a meaning across statutes.  See, e.g., A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 172–73 (2012).  I

---

[4] Compare Leslie Salt Co. v. United States, 55 F.3d 1388, 1397 (9th Cir. 1995) ("shall be subject to a civil penalty" is mandatory) and Beardsly v. Chicago & Nw. Transp. Co., 850 F.2d 1255, 1264 (8th Cir. 1988) ("shall be subject to resolution in accordance with the following procedures" is mandatory) with Leslie Salt, 55 F.3d at 1398 (9th Cir. 1995) (O'Scannlain, J., dissenting) (collecting district court cases concluding that "shall be subject to a civil penalty" is discretionary), United States v. Currency Totaling $48,318.08, 609 F.2d 210, 213 (5th Cir. 1980) ("subject to seizure" is permissive), and D.C. v. Miss Dallas Trucking, LLC, 240 A.3d 355, 361 (D.C. 2020) ("shall be subject to a civil penalty" is permissive).

must therefore look to the remainder of the PACT Act.  See United States v. Brummer, 598 F.3d 1248, 1250 (11th Cir. 2010) (looking to other sections of a statute to determine whether "shall be subject to seizure and forfeiture" was mandatory).  After all, I "must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose."  Abramski v. United States, 573 U.S. 169, 179 (2014) (quotation omitted).

These sources stop short of suggesting that the Postal Service *must* seize and destroy cigarette shipments.  Critically, § 1716E(c) does not specify who must conduct the seizure.  It instead provides that cigarettes are "subject to seizure and forfeiture" and that "[a]ny tobacco products seized and forfeited . . . shall be destroyed or retained by the Federal Government for the detection or prosecution of crimes or related investigations and then destroyed."  18 U.S.C. § 1716E(c).  This phrasing suggests that another arm of the federal government could conduct the seizure.  Thus, when the Postal Service knows or has "reasonable cause" to believe that a package contains cigarettes, the PACT Act gives the Postal Service two options: it may (A) seize the cigarettes itself or (B) take another action consistent with the Act.

Yet I cannot accept defendant's contention that the Return to Sender Program is consistent with the Act.  Once again, the key section is § 1716E(a)(1).  It bars the Postal Service from "accept[ing] for delivery or transmit[ting] through the mails any package that it knows or has reasonable cause to believe contains any cigarettes."  To "transmit" means "[t]o send or transfer (a thing) from one person or place to another."  Transmit, Black's Law Dictionary (11th ed. 2019).  By sending these packages back to cigarette sellers, the Postal Service is "transmitting" cigarettes through the mails.

Defendant goes to great lengths to avoid this commonsense conclusion.  Defendant first claims that "returning" a package does not amount to "accepting" that package for delivery.

That tells only half the story.  The Postal Service may not "accept for delivery *or* transmit through the mails" packages with cigarettes.  18 U.S.C. § 1716E(a)(1) (emphasis added).  Defendant cannot explain how it could return a package without transmitting it.[5]

Next, defendant casts the Postal Service as a "law enforcement" agency, cloaked with "law enforcement discretion."  It notes that "an agency's decision not to undertake certain enforcement actions" is presumptively unreviewable under the Administrative Procedure Act ("APA").  See Heckler v. Chaney, 470 U.S. 821, 831 (1985).  It also invokes the more general notion that courts are "ill-equipped" to review these non-enforcement decisions.  See Leland v. Moran, 80 F. App'x 133, 135 (2d Cir. 2003) (summary order) (collecting cases); see also Sewald v. Pyatt & Silvestri, Chtd., 161 F. Supp. 2d 1074, 1077 (N.D. Cal. 2001) (holding that the Postal Service had discretion to investigate certain matters).

Defendant's problem is that the Postal Service does not "enforce" § 1716E(a)(1) – it *complies* with it.  The section commands that the Postal Service "shall not" transmit cigarettes through the mails, using "shall" in "the mandatory sense that drafters typically intend and that courts typically uphold."  Shall, Black's Law Dictionary (11th ed 2019).  "[U]se of a mandatory 'shall' . . . impose[s] discretionless obligations."  Lopez v. Davis, 531 U.S. 230, 241 (2001).  Here, that lack of discretion reflects Congress's view that the Postal Service was not the means of fixing the problem, but part of it.  See United Parcel Serv., 131 F. Supp. 3d at 142.  Thus, the Postal Service cannot claim to "enforce" § 1716E(a)(1) by not mailing cigarettes.  It no more enforces this section than a driver enforces the speed limit.

---

[5] Defendant has not argued that transmitting packages internationally does not amount to transmitting packages "through the mails."  Cf. 18 U.S.C. § 1692 ("Every foreign mail, while being transported across the territory of the United States under authority of law, is mail of the United States, and any depredation thereon, or offense in respect thereto, shall be punishable as though it were United States mail.").

The allusion to administrative law is yet another diversion.  This case does not arise under the APA, but the PACT Act, a very different statute.  The APA provides a cause of action for those "adversely affected or aggrieved by agency action,' 5 U.S.C. § 702, but the APA withdraws it for actions "committed to agency discretion by law," § 701(a)(2).  The PACT Act has no such limitation.  Its cause of action applies "with respect to a violation."  18 U.S.C. § 1716E(h)(1).  Thus, the only question is whether the Return to Sender Program constitutes a violation.  For all the reasons above, it does.[6]

Therefore, plaintiffs have adequately alleged two violations of the PACT Act.  Because the Act provides a cause of action to redress those violations, plaintiffs have stated a claim.

## II.     The Declaratory Judgment Claims

### A.     Contraband Cigarettes and Contraband *Per Se*

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  Plaintiffs seek two such declarations.  First, they seek a declaratory judgment that defendant has violated the PACT Act.  Plaintiffs can seek that relief for the reasons set forth above.  Second, plaintiffs seek a declaratory judgment that "contraband cigarettes" are "contraband *per se*."  This claim cannot go forward.

---

[6] Although defendant claims that the administrative law cases "resonate" in those addressing the PACT Act, the cases it cites do not stand for this proposition.  One does not even involve PACT Act claims.  See City of New York v. Fedex Ground Package Sys., Inc., 314 F.R.D. 348, 353 n.2 (S.D.N.Y. 2016).  Although Fedex did discuss "executive discretion" more generally, id. at 356, the actual holding addressed whether a private party could assert certain defenses in a state enforcement action, not whether the Postal Service could assert those same defenses to defeat a cause of action, see id. at 357-60.  The other case defendant cites involves that same irrelevant issue.  See New York v. United Parcel Serv., Inc., 160 F. Supp. 3d 629, 644 (S.D.N.Y. 2016), vacated in part on reconsideration, No. 15-cv-1136, 2016 WL 10672074 (S.D.N.Y. June 21, 2016).

Plaintiffs borrow the term "contraband cigarettes" from the Contraband Cigarette

Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq. It defines the term as

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment
> of applicable State or local cigarette taxes in the State or locality where such
> cigarettes are found, if the State or local government requires a stamp, impression,
> or other indication to be placed on packages or other containers of cigarettes to
> evidence payment of cigarette taxes.

§ 2341(2). The CCTA lists certain exceptions not applicable here. See § 2341(2)(A)-(D). Thus,

as far as this case is concerned, "contraband cigarettes" are cigarettes without the requisite tax

stamps.

An item is "contraband *per se*" if "its possession, without more, constitutes a crime; or in

other words, if there is no legal purpose to which the object could be put." Sash v. United States,

No. 09-cv-450, 2009 WL 3007379, at *4 (S.D.N.Y. Sept. 22, 2009). "[C]ourts will not entertain

a claim contesting the confiscation of contraband *per se* because one cannot have a property right

in that which is not subject to legal possession." Id. (quoting Cooper v. Greenwood, 904 F.2d

302, 305 (5th Cir. 1990)). In a civil forfeiture proceeding, the government need not return that

item to "the person from whom [it] was seized," 18 U.S.C. § 983(a)(1)(F), nor may that person

assert an ownership interest in or seek the release of that item, § 983(d)(4), (f)(8)(A).[7]

Contraband status can also affect the amount of forfeiture. For example, when the Fourth

Circuit concluded that contraband cigarettes were contraband *per se*, it held that the cigarettes

were "unlawful goods" within the meaning of a civil forfeiture statute, 18 U.S.C. § 981(a)(2)(A).

See Hasan, 718 F.3d at 346-47. That holding ensured that the defendant would forfeit the gross

proceeds, not just the profits, that he earned through illegal cigarette trafficking. See id. at 347.

---

[7] Contraband *per se* stands in contrast to the "more expansive" category of "derivative contraband." Awan v. United States, No. 12-cv-3844, 2014 WL 1343129, at *3 (E.D.N.Y. March 31, 2014) (quotation omitted). That category "includes things that are not ordinarily illegal, like guns, automobiles, ships, and currency, that become forfeitable because of their relationship with a criminal act." Sash, 2009 WL 3007379, at *4 (quotation omitted).

Although plaintiffs have cited these cases and statutes, they have not clearly articulated how they apply to this case. The closest they come is to suggest that declaring contraband cigarettes to be contraband *per se* would "remove the costs and administrative burdens" of seizing cigarettes. Because those costs are the basis for the Return to Sender Program, plaintiffs seem to assume, a declaratory judgment would make the Postal Service more likely to seize cigarettes and less likely to continue the Return to Sender Program. And that change would remedy the alleged injuries – lost tax revenue and the flow of illegal cigarettes into plaintiffs' jurisdictions. This theory has two fatal flaws.

**B.     Actual Case or Controversy**

First, the claim lacks an actual case or controversy. As the Supreme Court has explained:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree . . . . Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Golden v. Zwickler, 394 U.S. 103, 108 (1969) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). This standard "require[s] that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (*colatus*).

This claim lacks that definite and concrete dispute. By plaintiffs' own account, declaring contraband cigarettes to be contraband *per se* would *benefit* defendant, for it would alleviate the "costs and administrative burdens" of civil forfeiture proceedings. Defendant has no incentive to oppose that result. Unsurprisingly, then, it has not argued that contraband cigarettes are not

contraband *per se*.  Nor have plaintiffs alleged that, in practice, defendant has failed to treat contraband cigarettes as contraband *per se* in civil forfeiture proceedings.

Indeed, defendant does not dispute how it could conduct a seizure, but whether it must conduct that seizure in the first place.  That dispute does not depend on whether contraband cigarettes are contraband *per se*.  Plaintiffs have not alleged that a declaratory judgment to this effect would require the Postal Service to seize cigarettes any more than the PACT Act already requires it to do so.  The same goes for shipping cigarettes.  Thus, the declaratory judgment would not resolve a "substantial controversy between or among the parties."  Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir. 1996).  Without that controversy, I could offer only "an opinion advising what the law would be upon a hypothetical state of facts," not the "specific relief" that the law requires.  MedImmune, 549 U.S. at 127; see also 10B C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2757 (4th ed 2020).

### C.     Standing

Plaintiffs also lack standing to bring this claim.  In a declaratory judgment action, a plaintiff must establish the familiar elements of Article III standing: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) "a causal relationship between the injury and the challenged conduct"; and (3) a "likelihood that the injury will be redressed by a favorable decision."  MGM Resorts Int'l Global Gaming Dev., LLC v. Malloy, 861 F.3d 40, 44 (2d Cir. 2017) (quoting Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 663–64 (1993)).  This claim runs aground on the last two elements.[8]

---

[8] Plaintiffs skip over Article III standing and focus exclusively on "prudential" standing.  See generally Bank of Am. Corp. v. City of Miami, 137 S. Ct. 1296, 1302–03 (2017) (explaining the difference).  Plaintiffs also cite a series of factors that the Second Circuit has used to assess whether a district court may decline to exercise jurisdiction over a

Causation and redressability are "substantially more difficult to establish" where, as here, "the plaintiff is not himself the object of the government action or inaction he challenges." Lujan v. Defs. of Wildlife, 504 U.S. 555, 562 (1992) (quotation omitted).  "In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction – and perhaps on the response of others as well."  Id. For instance, a plaintiff could show that government regulation would cause the third party to cease the conduct causing the plaintiff's injury.  See, e.g., Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin., 894 F.3d 95, 104–05 (2d Cir. 2018) (environmental groups had standing to challenge an agency's failure to strengthen automobile emissions standards because the standards caused manufacturers to cause environmental harm).  In these cases, it "becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury."  Lujan, 504 U.S. at 562.  The plaintiff "need not prove a cause-and-effect relationship with absolute certainty; substantial likelihood of the alleged causality meets the test."  Nat. Res. Def. Council, 894 F.3d at 104.

This claim presents these issues in an unusual context.  Plaintiffs do not claim that a declaratory judgment would cause the third parties – cigarette smugglers – to cease their harmful conduct.  Rather, plaintiffs argue that changing how the government treats those third parties' property would lead the government to reconsider a separate program that produces the alleged injury.  Specifically, the declaratory judgment would decrease the costs of forfeiture proceedings, incentivizing the Postal Service to abandon the Return to Sender Program.

---

declaratory judgment action.  See New York v. Solvent Chem. Co., 664 F.3d 22, 26 (2d Cir. 2011).  Because plaintiffs lack Article III standing, I need not address these issues.

This theory is too attenuated to establish causation or redressability.  True, like some viable theories, it relies on economic incentives.  For instance, a plaintiff can establish standing by showing that a favorable decision will increase the cost of the harmful conduct.  See, e.g., id. at 104–05.  But it does not quite follow that making alternative conduct less expensive will produce the same result.  Even if a declaratory judgment lowered the cost of forfeiture proceedings, defendant might nevertheless maintain the Return to Sender Program.  Perhaps the program would still be the most cost-effective strategy.  Perhaps defendant would have other policy reasons to continue the program.  Amid such uncertainty, I cannot find a substantial likelihood that defendant will abandon the Return to Sender Policy.  Cf. Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 42–43 (1976) (indigent plaintiffs lacked standing to challenge an IRS ruling that gave favorable tax treatment to hospitals that offered only emergency room service to indigent patients, reasoning "[i]t [was] purely speculative whether the denials of service . . . fairly can be traced to . . . 'encouragement' [from the favorable tax ruling] or instead result from decisions made by the hospitals without regard to the tax implications").  Therefore, plaintiffs lack standing to bring this claim.

## III.   The Mandamus Claim

The mandamus statute gives the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  A writ of mandamus requires "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989).  Plaintiffs cannot meet the third element because the PACT Act provides an adequate remedy.  See, e.g., Benzman v. Whitman, No. 04-cv-1888, 2006 WL 250527, at *27 (S.D.N.Y. Feb. 2, 2006) (holding that a cause of action under

another statute provided an adequate remedy), aff'd in relevant part, rev'd in part on other grounds, 523 F.3d 119 (2d Cir. 2008).  Defendant's motion to dismiss is therefore granted as to that claim.[9]

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss [20] is granted in part and denied in part.  Both the claim for a declaratory judgment that contraband cigarettes are contraband *per se* and the claim for a writ of mandamus are dismissed.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated:  Brooklyn, New York
        February 15, 2021

---

[9] It is not always clear whether a failure to satisfy the elements of a mandamus claim under § 1361 warrants dismissal for lack of jurisdiction or for failure to state a claim.  See 14 C. Wright, A. Miller & H. Hershkoff, Federal Practice & Procedure § 3655 (4th ed. 2020) (addressing this recurring issue);  The Second Circuit has not decided the issue, although it has affirmed district court decisions that dismissed for lack of jurisdiction.  See, e.g., H.M.G. v. Johnson, 599 F. App'x 396, 399 (2d Cir. 2015).  I think the better and more modern view is that I have subject matter jurisdiction over the alleged claim, but plaintiffs have failed to adequately state it.  See e.g. Sebelius v. Auburn Regional Medical Center, 568 U.S. 145 (2013); Arbaugh v. Y & H Corp., 546 U.S. 500 (2006); Lotes Co., Ltd. v. Hon Hai Precision Industry Co., 753 F.3d 395 (2d Cir. 2014).