

**GEORGIA M. PESTANA**
*Corporation Counsel*

**THE CITY OF NEW YORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Hope Y. Lu**
Phone: 212-356-2294
E-mail: hlu@law.nyc.gov

<u>**VIA ECF**</u>

October 26, 2021

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *City of New York and State of California, et al. v. United States Postal Service, et al.*, Case No. 1:19-cv-5934

Dear Judge Cogan:

      The parties, Plaintiffs the City of New York, the State of California, the State of Connecticut, the State of Illinois, and the Commonwealth of Pennsylvania (collectively, "Plaintiffs"), and Defendants United States Postal Service and Postmaster General Louis DeJoy (collectively, "Defendants"), submit this jointly composed single letter pursuant to Rule III(A)(1) of the Court's Individual Rules to request a conference. Plaintiffs are concerned with Defendants' delay in producing documents and will request that the Court set an interim schedule by which Defendants will produce documents to meet the discovery deadlines.

**<u>Plaintiffs' Concerns Regarding Defendants' Document Production</u>**

      For the last seven months, following the March 4, 2021 service on Defendants of Plaintiffs' First Request for Production of Documents, Defendants have produced 69 documents. Plaintiffs have already produced 4,817 of the most relevant documents Plaintiffs have in their possession, including ESI.[1]  Plaintiffs' concern with the slow pace of Defendants' production stems from the Case Management Plan's (Dkt. No. 43) requirement that all Interrogatories and Requests for Production of Documents be served on or before November 16, 2021, with document production to be completed by December 16, 2021. Plaintiffs' anticipated need for follow-up Interrogatories and Requests for Production of Documents contemplates receipt of Defendants' document production, which is the very purpose of rolling productions. Plaintiffs

---

[1] This equates to 16,436 pages of responsive documents.

have repeatedly reminded Defendants of the discovery deadlines. However, Defendants have not produced any documents since July, nor committed to any timeline by which additional documents would be produced.

The parties have been engaging in negotiations regarding search terms and custodians for email discovery for several months. On August 5, Defendants received the final negotiated list of search terms that they agreed to use to evaluate the number of hits.[2] Plaintiffs then followed up several times regarding Defendants' document production resulting from those terms. Defendants provided deadlines for when they would respond but failed to meet them, citing technical issues. On October 13, after prodding from Plaintiffs, the parties met and conferred[3], and Defendants stated that they were able to agree to some terms, but not others. After some back and forth, on October 20, the parties finally reached agreement on search terms for the email of Defendants' custodians. However, Defendants were still unable to provide any timeline for when they could begin producing email resulting from the agreed upon search terms.[4]

At the parties' October 13th meet and confer, Defendants were also unable to provide timeframes for the production of other large categories of non-email documents responsive to Plaintiffs' First Requests for Production of Documents. On September 28, 2021, Plaintiffs had emailed Defendants about certain categories of documents that Plaintiffs expected to see in Defendants' productions in response to Plaintiffs' First Request for Production. Defendants did not respond to that email until October 15, the day after getting a draft of this letter submission from Plaintiffs, and Defendants' responses were neither substantive nor do they provide any timeline for when Defendants are going to be producing those documents. In fact, at the meet

---

[2] The parties' stipulated protective order and clawback agreement was entered at the end of May 2021. During the preceding months, Plaintiffs also ran preliminary searches over email to evaluate potential search terms. Plaintiffs then initiated the conversation on search terms at the beginning of June 2021, proposing potential custodians and search terms on Plaintiffs' email. Defendants did not do the same and instead asked Plaintiffs for proposals, which Plaintiffs provided at the beginning of July 2021 (after reviewing the documents it had available) in order to move things forward.

[3] In accordance with Rule III(A)(1) of the Court's Individual Rules, counsel for Plaintiffs (Hope Lu for New York City, Lesya Kinnamon and Karen Leaf for California, Heather Wilson for Connecticut, Megan Fritsch for Pennsylvania, and Josh Turner and Grant Anderson for Illinois) and counsel for Defendants (Ekta Dharia and Rachel Balaban) met and conferred on October 13 for approximately one hour via Zoom conference.

[4] Defendants agreed to the search terms Plaintiffs would use to evaluate hits on their custodians' emails on August 30. On October 20, 2021, the parties also reached final agreement on the search terms and timeframe for the email discovery of Plaintiffs' custodians. Plaintiffs have already reviewed thousands of emails as part of analyzing and proposing adjustments to search terms (which has resulted in tens of thousands of hits *per problematic term*, with one term resulting in over 80,000 hits with families) and will be able to begin producing shortly. Furthermore, Defendants have the most relevant documents in this litigation, not Plaintiffs, as this case is about the Postal Service's acceptance or transmission of cigarettes in violation of the PACT Act.

and confer, Defendants indicated that they had not even begun evaluating the process for producing various categories of responsive documents from highly relevant databases.[5]

In sum, Plaintiffs are very concerned with the delay in Defendants' production, which is seriously impairing Plaintiffs' ability to develop their case. The parties have been simultaneously working diligently on settlement negotiations and discovery; however, Plaintiffs are concerned that the settlement negotiations are impeding Defendants' focus on discovery.

## Defendants' Response to Plaintiffs' Concerns

Defendants oppose Plaintiffs' filing of this letter because there is no discovery dispute at issue for the Court to resolve. Rather, the parties have worked together, in good faith, to reach an agreed-upon plan for the production of their electronically stored information ("ESI"), and the parties are in the process of implementing that agreed-upon plan. First, Defendants have agreed to Plaintiffs' proposed search terms for production of their ESI. Second, Plaintiffs have agreed to Defendants' proposed search terms for production of their ESI. Third, Defendants began reviewing ESI and preparing those documents for production as soon as Defendants secured Plaintiffs' agreement to the proposed search terms for Defendants' production of ESI. Finally, Defendants are aware of the discovery deadlines that were agreed-upon by the parties and so-ordered by the Court, and intend to produce all responsive, non-privileged documents on a rolling basis by the December 16, 2021 deadline for the production of documents. *See* Dkt. 43 at 4.

To reach this agreement, Defendants engaged in significant efforts to identify and cull responsive records over the past several months. In April 2021, Defendants ran initial audits of ESI to determine the full universe of documents that may be potentially responsive to Plaintiffs' discovery demands. Running those preliminary searches took approximately several weeks and resulted in approximately 1 million to 1.5 million document results. Those results were too burdensome for Defendants to review and were likely to yield numerous nonresponsive documents. Defendants thus agreed to meet and confer with Plaintiffs regarding limiting search terms for ESI.

Over the following months, from April to July 2021, the parties made several rolling productions of documents. During that period, Defendants produced approximately 69 documents, which totaled 4,776 pages of responsive documents.

In June 2021, the parties met and conferred regarding potential search terms for production of both parties' ESI for the first time. Defendants asked Plaintiffs to propose search terms for Defendants' ESI. Plaintiffs, however, did not provide their initial proposal until July 2021. Over the following months, until September 2021, the parties negotiated and met and conferred numerous times regarding ESI search terms. In late August 2021, after much negotiation, the

---

[5] On October 21, 2021, a week after receiving a draft of this letter and requesting more time to include their section, Defendants emailed Plaintiffs with information about responsive ESI from databases but again, provided no timeline for when Plaintiffs would receive this production. This ESI is unrelated to the search terms negotiations.

parties agreed to run preliminary searches on agreed-upon search terms to assess the potential burden of the searches, and then consult with one another on a final set of terms before running the searches and producing ESI.

Defendants expected, based on USPS's earlier audits, that the new audits would take a week to run and informed Plaintiffs that they *anticipated* results in *approximately* a week. Due to computer and server capacity issues that arose, however, in part because of the enormous volume of responsive ESI, the new audits took significantly longer to run. In September 2021, Defendants informed Plaintiffs that several of the audits resulted in over 11 million hits, which had shut down USPS's search systems. In addition, Defendants informed Plaintiffs that they had completed the two searches most likely to result in responsive documents. In an effort to proceed with discovery, Defendants proposed to Plaintiff that, even though the audit yielded approximately 100,000 documents from those two searches (which amounted to approximately 300,000 documents when including attachments and document "families"), Defendants were willing to review and produce responsive, non-privileged documents from that set of results. The parties then worked to revise the search terms on the remaining searches, and reached an agreement as to how best to modify those searches in mid-October 2021. Shortly thereafter, Defendants informed Plaintiffs that those additional modified searches yielded another approximately 100,000 documents.

Defendants have thus agreed to review—and, indeed, have already begun reviewing—the 400,000 documents based upon the agreed-upon search terms. Defendants intend to produce responsive, non-privileged ESI from those search results prior to the document production deadline.

Defendants also intend to review and produce responsive, non-privileged data on USPS mail that is stored in USPS databases. In October 2021, in response to Plaintiffs' inquiry during a meet-and-confer telephonic conference, Defendants provided Plaintiffs with detailed information about its database systems and the type of information those databases hold. Defendants intend to review that information and to produce responsive, non-privileged ESI data from these databases.

Plaintiffs, by contrast, took even longer than Defendants to provide an update on their ESI search audits. In October 2021, Plaintiffs informed Defendants that they had unilaterally decided that the agreed-upon searches were too burdensome because they hit on "tens of thousands" of documents and unilaterally decided to change the searches, and the time period, in order to produce fewer hits. Plaintiffs also committed to providing hit counts for its search results to Defendants— but, to date, Plaintiffs have not provided Defendants with any such result.

The majority of documents produced by Plaintiffs thus far, moreover, have been produced by only two Plaintiffs: Plaintiff City of New York and Plaintiff State of California. Plaintiff State of Connecticut has produced only two documents totaling three pages. Plaintiff State of Illinois has produced only one document totaling nine pages. Plaintiff State of Pennsylvania has produced *zero* documents. Of the 4,817 documents Plaintiffs City of New York and State of California have produced, 3,534 (75%) are photographs, and more than half of the remaining 1,183 documents are

duplicates or near-duplicates of each other, leaving only 502 original, textual documents produced by Plaintiffs.

Although Plaintiffs focus on the November 16, 2021 deadline for all interrogatories and document requests, that is not the document production deadline. Plaintiffs, moreover, have served Defendants with *fifty-two* document requests, the latest of which were served on September 28, 2021. It is difficult to imagine any new discovery demands that would suddenly arise at this late stage, especially given that Plaintiffs have investigated and been involved in the underlying matters at issue in this case for years prior to the commencement of this action.

Nevertheless, in a good-faith attempt to proceed with discovery in this case, Defendants have agreed to Plaintiffs' search terms for its ESI document production. Accordingly, the parties have reached an agreement on discovery and have commenced reviewing and preparing responsive, non-privilege ESI for production.

In addition to Defendants' efforts on discovery detailed in this letter, Defendants have also spent significant time and resources over the past six months to work towards an out-of-court resolution of this case. The parties have conferred regarding settlement proposals for dozens of hours, have spent numerous hours revising and reviewing proposed settlement terms, and have appeared at three settlement conferences before Judge Scanlon.

In sum, Defendants oppose Plaintiffs' filing of this letter and assert that there is no dispute at issue before the Court. There is, moreover, no need for any "interim" deadline(s) because the Court has already set a document production deadline with the requirement of rolling productions. Defendants are reviewing ESI and will produce responsive, non-privileged documents in the timeframe that has already been set forth by the Court. Alternatively, to the extent that the Court intends to impose any interim deadlines for discovery, Defendants request that the same deadlines apply to Plaintiffs' document productions.

GEORGIA M. PESTANA
Corporation Counsel of the City of New York

By: ___/s/_____

Hope Lu
Eric Proshansky
Assistant Corporation Counsel
100 Church Street, 20th Fl.
New York, New York 10007
(212) 356-2294 (Lu)
(212) 356-2032 (Proshansky)
HLu@law.nyc.gov
EProshan@law.nyc.gov
*Attorneys for Plaintiff The City of New York*

BREON S. PEACE
United States Attorney

By: ___/s/_____

Rachel G. Balaban
Ekta R. Dharia
Assistant U.S. Attorney
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
Rachel.Balaban@usdoj.gov
Ekta.Dharia@usdoj.gov
*Attorneys for Defendants*

ROB BONTA
Attorney General of California

By: /s/_____

Lesya Kinnamon
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 95814
(916) 210-6093
Lesya.Kinnamon@doj.ca.gov
*Attorneys for Plaintiff*
*State of California*

KWAME RAOUL
Attorney General of Illinois

By: /s/_____

Grant Anderson
Assistant Attorney General
100 West Randolph Street
Chicago, IL 60601
(312) 814-3000
Grant.Anderson@ilag.gov
*Attorneys for Plaintiff State of Illinois*

WILLIAM TONG
Attorney General of Connecticut

By: /s/_____

Heather J. Wilson
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
heatherj.wilson@ct.gov
*Attorneys for Plaintiff State of Connecticut*

JOSH SHAPIRO
Attorney General of Pennsylvania

By: \_\_\_\_/s/_____
Megan Fritsch
Edmund (Tad) Berger
Chief Deputy Attorney General
15th Floor Strawberry Square
Harrisburg, PA 17120
(717)- 705-8579 (Fritsch)
(717)-783-7559 (Berger)
mfritsch@attorneygeneral.gov
eberger@attorneygeneral.gov
*Attorneys for Plaintiff*
*Commonwealth of Pennsylvania*