

| | | |
|---|---|---|
| **GEORGIA M. PESTANA**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | Hope Y. Lu<br>Phone: 212-356-2294<br>E-mail: hlu@law.nyc.gov |

**VIA ECF**  December 21, 2021

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *City of New York and State of California, et al. v. United States Postal Service, et al.*, Case No. 1:19-cv-5934

Dear Judge Cogan:

Plaintiffs the City of New York, the State of California, the State of Connecticut, the State of Illinois, and the Commonwealth of Pennsylvania (collectively, "Plaintiffs") request an Order compelling Defendants United States Postal Service and Postmaster General Louis DeJoy (collectively, "Defendants" or "USPS") to produce the following records, for which Defendants refuse to conduct the requisite searches:

(1) Produce documents from database queries using the addresses of repeat, large volume senders of cigarettes, including those to which USPS returned packages of cigarettes. Having returned cigarettes to those senders, USPS knows or has reasonable cause to believe they ship cigarettes in international mail in violation of the PACT Act;

(2) Produce documents regarding packages returned to sender after having been marked in the Remote Forwarding System database as "cigarettes" by any USPS employee, and not just an employee of the United States Postal Inspection Service ("USPIS"),[1] as USPS proposes;

(3) Produce documents from relevant databases from 2013 to the present, consistent with the six-year statute of limitations applicable in this case – and not from the October, 2018 date offered by USPS, which Defendants claim was previously agreed to by Plaintiffs; and

(4) Produce documents from database queries using the term "gift" in the field for package content description for inbound international mail. USPS admits that "gift" is used by cigarette shippers to avoid detection, and is a "general characteristic[] of inbound packages of cigarettes" (*see* Ex. A, USPS_002042). For packages identified as "gift," Plaintiffs seek data regarding the identity of the senders and recipients, whether the packages were delivered or returned to sender, and package weights. These facts, including whether these persons are advertising on publicly available websites

---

[1] USPIS is the law enforcement arm of USPS.

as mailing cigarettes using USPS (*see* 18 U.S.C. § 1716E(a)(2)), are all relevant to whether USPS had "reasonable cause to believe" that packages from these senders and recipients contain cigarettes.

After Defendants' last communication on these topics on December 7th, Plaintiffs sent Defendants a draft of Plaintiffs' section of this letter on December 9th for Defendants to insert their section pursuant to Your Honor's Individual Rules to file a single letter, jointly composed. Defendants responded that they would not provide their section until December 17th. On December 16th, Plaintiffs sent Defendants some additional edits that Plaintiffs viewed as clarifying and not substantive. Defendants then stated they needed further time, until December 21st, to send their response. Plaintiffs' and Defendants' sections are below.

Plaintiffs dispute Defendants' account and characterizations, but nevertheless submit Plaintiffs' section as it was sent to Defendants, in order to avoid further delay in presenting these issues to the Court. Plaintiffs object to Defendants' request that any conference regarding these issues be delayed until January 4, 2022, or later.

**Plaintiffs' Section**

**Background.**

Plaintiffs' Amended Complaint alleges that USPS violated the PACT Act by accepting for delivery and transmitting through the mails packages USPS knew or had reasonable cause to believe contained cigarettes. *Am. Compl.* ¶ 1. The alleged violations include both USPS's delivery of cigarettes nationwide and USPS's practice of sending cigarette packages through the mails to return them to foreign senders. Order, Doc. No. 38, at 3-4; *Am. Compl.* ¶¶ 32, 41-42. Plaintiffs allege that USPS's international mail facilities are major ports of entry into the United States for cigarettes sold over the Internet. *Am. Compl.* ¶¶ 33, 42, 46-48. Several federal law enforcement agencies performed package audits at USPS international mail facilities, where USPS identified and segregated packages suspected of containing cigarettes. *Am. Compl.* ¶¶ 110-114. After finding tens of thousands of packages of cigarettes, sender and recipient addresses were documented. *Id.*

Plaintiffs have asked Defendants to search their relevant databases using the addresses for persons that, based on the audits, USPS knows are repeat senders of large volumes of cigarettes, and to produce the associated records.[2] Plaintiffs sent Defendants a list of addresses from persons identified in the audits, but Defendants refused to conduct this search, citing irrelevance and burden. To address Defendants' burden concern, Plaintiffs removed from the list the addresses of senders who mailed small shipments of cigarettes (*i.e.* less than 20 cartons) and those who made shipments of cigarettes to jurisdictions other than Plaintiffs'. Defendants continued to refuse.

---

[2] Despite Plaintiffs' attempts to obtain this information before this date, Defendants informed Plaintiffs of the databases they planned to search on October 21, 2021; their last communication refusing to conduct the requisite searches was on December 7th. The parties had meetings about these searches on November 10th, November 22nd (after Plaintiffs reviewed documents Defendants had produced a few days prior), and December 2nd (after Plaintiffs reviewed additional documents Defendants had produced a few days prior). The following counsel were present at these meet and confers: For Plaintiffs, Eric Proshansky and Hope Lu for the City of New York, Lesya Kinnamon for the State of California, Tad Berger and Megan Fritsch for the Commonwealth of Pennsylvania, Heather Wilson for the State of Connecticut, and Josh Turner for the State of Illinois were present. For Defendants, Ekta Dharia and Rachel Balaban and their clients were present on November 10th and 22nd; Rachel Balaban and her clients were present December 2nd. The parties met about these topics for approximately 30 minutes at each meeting and have also exchanged several emails.

2

Defendants also refused to search the Remote Forwarding System database for information regarding the return of cigarette packages to sender by any USPS employee, as opposed to only USPIS employees. Defendants refused to search the full timeframe within the applicable statute of limitations. Additionally, Defendants refused to search the term "gift," stating that the search is "not reasonably calculated to lead to the production of relevant information." Plaintiffs address each issue below.

1. **Records showing that USPS continued to deliver packages either from repeat large volume international senders of cigarettes, or to repeat large volume domestic recipients of cigarettes, are relevant.**

Plaintiffs seek the production of records showing that USPS continued to deliver, or return to sender, packages on behalf of persons USPS "knows or has reasonable cause to believe" repeatedly ship large amounts of cigarettes. These records are directly relevant to the question at the heart of the case: whether USPS "accept[ed] or transmit[ed] packages in the mail that [USPS] knows or has reasonable cause to believe contains cigarettes" in violation of the PACT Act. 18 U.S.C. § 1716E(a)(1). The PACT Act provides for two non-exhaustive examples of "reasonable cause" to believe a package contains cigarettes. "Reasonable cause to believe *includes*" (1) "a statement on a publicly available website, or an advertisement, by any person that the person will mail . . . nonmailable [cigarettes]" or (2) "the fact that the person is on the [Non-Compliant List][.]"[3]. 18 U.S.C. § 1716E(a)(2) (emphasis added). Use of the term "includes" means that Congress did not intend to limit "reasonable cause to believe" to the two examples provided, as USPS appears to contend. Rather, Congress intended "reasonable cause to believe" to include any information available to USPS indicative of packages containing cigarettes. To the extent USPS's records show repeat senders of large volumes of cigarettes, or repeat recipients of large volumes of cigarettes, such information qualifies as "reasonable cause to believe" that such packages contain cigarettes. The information Plaintiffs seek is, accordingly, highly relevant.

2. **USPS's labeling of foreign-origin packages as for "return to sender" and "PACT – Cigarettes/Tobacco" in USPS's Remote Forwarding System are relevant.**

Plaintiffs seek records from USPS's comprehensive Remote Forwarding System regarding foreign-origin packages that USPS employees electronically marked for "return to sender" using a specific computer menu drop-down category called "PACT- Cigarettes/Tobacco." USPS has offered to search a different, far more limited database for information about packages that were prophylactically identified as containing cigarettes, and consequently earmarked for "return to sender," by specific USPIS employees only, not for all USPS employees. The database USPS proposes to use is limited to information only from April 2021. The retention period for the Remote Forwarding System is far longer (as Plaintiffs understand it), and is not limited to USPIS employees. Thus, Plaintiffs seek records available from the Remote Forwarding System regarding packages,

---

[3] The Non-Compliant List (or "NCL") is a "List of unregistered or noncompliant cigarette sellers" "that have not registered with the Attorney General of the United States pursuant to section 2(a) [15 USCS § 376(a)], or that are otherwise not in compliance with this Act [15 USCS §§ 375 et seq.]." The PACT Act requires the U.S. Attorney General distribute the NCL to USPS, and USPS has received the NCL since the enactment of the PACT Act. *Am. Compl.* ¶ 31.

marked in advance for "return to sender" on the basis of containing cigarettes, by any USPS employee, not just USPIS employees.

### 3. Plaintiffs are entitled to relevant records from USPS's databases from 2013 to the present under the applicable statute of limitations.

Defendants have not disputed that a six-year statute of limitations applies in this case. Instead, Defendants are only willing to search from October 2018 because the tapes containing data from 2013-2017 are "less accessible," and they "cannot be sufficiently confident that such searches would be complete in the [eleven-month] timeframe provided by the Court."[4] Defendants have known about Plaintiffs' discovery requests since at least March 4, 2021.[5]

Plaintiffs are entitled to records from the entire time period at issue in the case. Plaintiffs should not be disadvantaged by Defendants' failure to begin accessing "less accessible tapes" sooner. Defendants' refusal to search and produce information from 2013 to October 2018 prejudices Plaintiffs. Omitting searches for the full time period at issue negatively impacts Plaintiffs' ability to prove their damages and penalties claims, and, even more significantly, Plaintiffs' ability to meet its burden to show the magnitude and extent of USPS's non-compliance with the PACT Act.

### 4. Records showing that USPS delivered packages electronically labeled "gift," connected with other indicia, are relevant.

Plaintiffs seek USPS records showing USPS delivered or returned to sender packages containing the term "gift" in foreign-origin mail package content description. USPS itself identifies this term as suspicious, indicative of cigarettes in inbound international mail packages by senders who seek to avoid detection. *See* Ex. A, USPS_002042. Defendants have stated only in conclusory fashion that this search "is not reasonably calculated to lead to the production of relevant information."[6] However, the label "gift" when connected with other indicia (*i.e.* frequency of shipments, shipper and recipient identity, and package weight) may well give rise to "reasonable cause to believe" that USPS is shipping packages containing cigarettes. USPS has "reasonable cause to believe" a package contains cigarettes if the sender advertises on a publicly available website that the sender mails cigarettes using USPS. *See* 18 U.S.C. § 1716E(a)(2). USPS's delivery of packages labeled "gift" for such a sender is certainly relevant.

---

[4] Defendants first stated on November 10th, when they had less than a month for document production, that it would take over two months to include searches of their relevant databases for the entire time period. Stating explicitly that their response was based on this representation, Plaintiffs reluctantly agreed that USPS move forward with searching a more limited timeframe with reservation of rights to request search of the omitted timeframe. However, after Defendants received a two-month extension from the Court to produce their documents, Defendants withdrew their representation that it would take over two months to conduct the search. Thus, Plaintiffs request that Defendants be required to search their databases from 2013 to the present, as Plaintiffs will be severely prejudiced otherwise.

[5] Plaintiffs had served on Defendants essentially the same discovery requests, with some tweaks, in November, 2019, prior to the decision on the motion to dismiss.

[6] Defendants have not provided a hit report showing that this search would result in voluminous results. If the results were voluminous, Plaintiffs would be amenable to adding limiting terms.

4

**Defendants' Section**[7]

    I.    **Background Regarding USPS's Databases and Production of Data from USPS's Databases**

        A.    **USPS's Databases**

By way of background, USPS maintains several databases that contain information regarding inbound international mail that USPS processes. Those data systems include:

- Electronic Manifest Central Database ("EMCDB")
- Global Business System ("GBS")
- Product Tracking and Reporting ("PTR")
- Enterprise Data Warehouse ("EDW")

The first three systems—EMCDB, GBS, and PTR—are databases that contain the available customs data and tracking history for millions of mailpieces. The data is fragmented across these three databases. Among other things, EMCDB contains customs data regarding mailpieces (*e.g.*, sender and recipient names and addresses, senders' descriptions of package contents), while the GBS and PTR databases contain tracking data regarding mailpieces (*e.g.*, operations performed on a package at a given stage of its journey). The live EMCDB, GBS, and PTR databases are not configured to efficiently run the types of complex searches required to pull the broad sets of data requested by Plaintiffs. Although these databases contain data on inbound international mail, which is the subject of this litigation, the databases also have data for numerous mailpieces that are not inbound international packages and, therefore, are outside the scope of this litigation. These databases are live, meaning that USPS personnel continuously use the data and work with these databases in order to engage in normal USPS operations.

The fourth data system—EDW—houses archived data from the first three databases. EDW stores data on different types of media, with varying degrees of accessibility depending on the data's age. The EMCDB, GBS, PTR, and EDW systems each contain dozens of data tables, each of which contains up to several dozen columns of data, for millions of mailpieces from each year. The data is further multiplied by the fact that a given mailpiece may occupy multiple rows of a data table, one for each event in that mailpiece's history. Together, that amounts to a body of data numbering into billions of lines.

        B.    **Defendants' Production of Data from USPS's Databases**

Defendants have determined that the above-described data sources contain data responsive to Plaintiffs' Requests for the Production of Documents. Defendants are thus in the process of searching for and preparing to produce responsive data as part of its electronically stored information ("ESI") production, which USPS plans to complete by the Court-ordered deadline of February 11, 2022.

Specifically, Defendants are searching for and will produce customs declaration data and tracking data regarding foreign-origin packages that can be identified as having contained cigarettes. Because those databases are all used by USPS for daily operations, running extensive searches in

---

[7] Should the Court hold a status conference on Plaintiffs' motion, the undersigned Assistant U.S. Attorneys respectfully inform the Court that they will be unavailable from December 27, 2021 to January 3, 2022 and request that the Court hold the conference at a time convenient for the Court on or after January 4, 2022.

5

them would tie up those systems and interrupt the normal function of daily operations—including the interdiction of cigarette packages and other nonmailable items. Accordingly, to minimize the impact on USPS's daily operations, USPS is relying on the EDW system to conduct searches of EMCDB, GBS, and PTR data.

To find responsive data, USPS is conducting several searches of its data in the EDW database, which will, for the reasons discussed above, include data from the three other databases (EMCDB, GBS, and PTR). USPS's searches include the following: (1) cigarette-related keywords in the content description section on customs declarations for FY2019 to the present; (2) notes by USPS Inspection Service personnel who screen and flag packages as potentially containing cigarettes for FY2019 to the present; (3) foreign senders listed on the Non-Compliant List[8] for FY2019 to the present; (4) packages that were the subject of postage-refund or indemnity claims for which a claimant alleged cigarette contents for FY2019 to the present; and (5) packages identified as containing cigarettes in certain documents produced by Plaintiffs for FY2017 to the present.

To illustrate the scale of production, Defendants currently anticipate that the agreed-upon searches of the databases for FY2019 to the present *alone* will result in producing approximately 250 data files containing well over 9 million lines of data. This week, Defendants intend to produce 113 data files containing more than 601,000 lines of data.

### C. Discussions of Defendants' Database Data Production Among the Parties

On November 10, 2021, the parties discussed by video conference, at length, Defendants' proposal to search its databases. Specifically, Defendants proposed the five searches discussed in section B. above. During that conversation, Defendants explained the undue burdens involved in keyword-based searches of mailpieces processed prior to October 2018 and the relative inaccessibility of data on USPS's archived tapes. Defendants asked Plaintiffs if they would agree to this limitation so that Defendants could accurately inform the Court of a proposed document production deadline for the remainder of its ESI and, if necessary, timely bring any dispute regarding the timeframe for the database search to the Court's attention.

On November 12, 2021, Plaintiffs informed Defendants in an email that they *agreed* to Defendants' proposal of those five searches. In reliance on Plaintiffs' agreement to Defendants' search proposals, and based on Defendants' internal review regarding the length of time it would take to conduct those searches and produce responsive data, in accordance with the Court's direction, Defendants filed a letter requesting that their document production deadline be extended to February 11, 2022. The Court granted Defendants' request, and ordered that it was the "absolute final date for defendant's final production of all documents." *See* Order (Nov. 15, 2021).

After Defendants submitted their proposed document production deadline, and after the Court ordered that February 11, 2022 was the final date for Defendants' document production, Plaintiffs requested, by email, *new, additional* searches for data that Plaintiffs had not raised previously with Defendants. Those searches included, among other things, searches for the term "gift," searches of addresses from audit spreadsheets produced by Plaintiffs, and searches of Defendants' Remote

---

[8] As discussed in Plaintiffs' section, the Non-Compliant List is a "[l]ist of unregistered or noncompliant delivery sellers" of cigarettes or smokeless tobacco "that have not registered with the Attorney General of the United States pursuant to [15 U.S.C. § 376(a)], or that are otherwise not in compliance with [15 U.S.C. Chapter 10A]." 15 U.S.C. § 376a(e)(1)(A).

6

Forwarding System ("RFS") database. Defendants provided detailed responses regarding why Plaintiffs' newly proposed searches were not reasonable and were unduly burdensome.[9]

Plaintiffs now belatedly seek an order from the Court requesting that Defendants add several database searches and data to its productions. Plaintiffs' proposals are overbroad and unduly burdensome, and should be denied for the following reasons.

## II.     Plaintiffs' Purported Discovery Disputes Regarding USPS's Databases

"[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). "[A] district court [may] limit [t]he frequency or extent of use of the discovery methods otherwise permitted under [the Federal] [R]ules if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or more readily obtainable from another source; (2) the party seeking discovery already has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003).

"Generally, a party is not required to produce ESI from sources 'that the party identifies as not reasonably accessible because of undue burden or cost.'" *Black Love Resists in the Rust by & through Soto v. City of Buffalo*, 334 F.R.D. 23, 29 (W.D.N.Y. 2019) (citation omitted); *see also* Fed. R. Civ. P. 26(b)(2)(B)-(C). "When determining a motion to compel the production of ESI, a district court conducts a two-stage inquiry: first, has the party resisting discovery shown that the information in question is not *reasonably* accessible because of *undue* cost, and second, has the party requesting discovery nonetheless shown good cause to obtain it?" *Stinson v. City of New York*, No. 10 Civ. 4428, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015) (emphasis in original).

### 1. Plaintiffs' Request for "Repeat Sender and Recipient" Data is Overbroad, Not Likely to Yield Responsive Data, and Unduly Burdensome

Plaintiffs request that Defendants search for and produce data for "repeat, large volume senders and recipients" of cigarettes.

Plaintiffs' request for data for "repeat, large volume senders and recipients" is overbroad and not likely to yield any probative data that will not already be identified by Defendants in their current searches. First, Plaintiffs' proposal would result in data that has no connection to cigarettes in inbound international mail. Indeed, Plaintiffs' proposal seeks data on packages sent or received by ordinary persons that lack any actual indicia of cigarette contents. Although a "repeat sender [or] recipient" may have received numerous packages containing cigarettes, that same sender or recipient is likely to have received a significant number of packages containing items such as books, clothing,

---

[9] Plaintiffs' assertion that Defendants "withdrew their representation that it would take over two months to conduct the search," which Plaintiffs informed Defendants was based on Defendants' comments in a November 19, 2021 email, is incorrect. Defendants never withdrew any such representation. In their November 19, 2021 email, rather, Defendants informed Plaintiffs that they never "made any specific representations as to timing." Defendants further stated that they "cannot be sufficiently confident that [the additional] searches [Plaintiffs sought] would be complete in the timeframe provided by the Court for the USPS's absolute deadline." Defendants also informed Plaintiffs that if their understanding of the production timeline changed, Defendants would reevaluate their feasibility assessment. Nowhere in that email, or in any correspondence, did Defendants withdraw any representations regarding timing for production of the database data.

or medicine—contents that have no relation to cigarettes. Second, to the extent Plaintiffs' proposal yields data of packages identifiable as containing cigarettes in inbound international mail, that data will overlap with the data Defendants have *already agreed* to search and produce. Defendants, for instance, have agreed to search for data on packages from foreign parties on the Non-Compliant list— that is, senders and recipients patently associated with illicit cigarette trafficking—regardless of what the content descriptions of those packages contain. Defendants have also agreed to search and produce data from cigarette-related keyword searches on customs declarations in its databases. Thus, Plaintiffs' proposed searches for "repeat sender and recipient" is likely to result in data that replicates the results of Defendants' existing search methods.

Plaintiffs' proposal, moreover, would impose an undue burden on USPS because it would require USPS to conduct several additional iterative searches of data that will require significant time and resources. Defendants anticipate that USPS would need to cull all sender and recipient names and addresses, along with the incidence rate of cigarette packages, and run those names through USPS's databases. It is not unreasonable to anticipate that the results of these additional searches— every inbound international package sent or received by millions of persons—is likely to yield millions, if not billions, of additional lines of data, all of which, as explained above, will be irrelevant to this case or duplicative of Defendants' existing searches.

### 2. Plaintiffs' Request for Data in USPS's Remote Forwarding System Is Overbroad, Not Likely to Yield Responsive Data, and Unduly Burdensome

Plaintiffs also request that Defendants search for and produce data from a fifth data source, USPS's Remote Forwarding System ("RFS"). By way of background, RFS is a system USPS uses to generate labels for mailpieces—regardless of their contents—that USPS forwards or returns to sender for a variety of reasons, such as cases where a recipient has moved or where a delivery address is invalid.[10]

Plaintiffs' request for data in the RFS system is not likely to yield any additional responsive data. That is because the data in RFS regarding packages containing cigarettes would be duplicative of USPS's other databases, which Defendants *have already agreed* to search. Before inputting data into the RFS system, USPS Inspection Service personnel first screen and log data regarding inbound international packages containing cigarettes in the EMCDB and GBS databases. Only *after* USPS Inspection Service personnel log a cigarette return in those databases do they prepare a physical return label using RFS. Thus, the data from the RFS system would, by definition, overlap substantially with what Defendants will already produce in the EMCDB and GBS databases.

Not only would producing RFS records yield no additional relevant information, but the burden of enlisting multiple groups of personnel at USPS to spend hours retrieving duplicative RFS records would be unduly burdensome. Defendants anticipate that compiling and producing records from RFS would require several additional months, because it would require USPS to retrieve the

---

[10] Plaintiffs appear to operate under a misunderstanding that "any USPS employee, not just [USPS Inspection Service personnel]," can order an inbound international mailpiece returned due to cigarettes and use RFS for that purpose. Defendants are unclear as to the source of this misunderstanding, which Plaintiffs never previously indicated to Defendants. At any rate, it is in error. Only USPS Inspection Service personnel use RFS to label cigarette packages for return due to their prohibited content; no other USPS personnel are authorized to use RFS in that way.

8

data files from RFS, compile them into a unified data set, run searches for the relevant data, and process the results for production.

### 3. Plaintiffs Have Agreed to Defendants' Proposal to Search for Data from FY2019, and Searching for Data Prior to that Period Is Unduly Burdensome

With respect to Plaintiffs' request for data starting in 2013, Defendants should not be required to produce the rest of the data Plaintiffs seek because the process of conducting and producing data from keyword-based searches from 2013 to FY2018, and barcode-based data from prior to FY2017, is unduly burdensome and disproportionate to the needs of the case.

As discussed above, Plaintiffs previously agreed to Defendants' time limitation for the database search. Specifically, Defendants can, and have agreed to search and produce, data from cigarette-based keyword searches from FY2019 to the present. That data is reasonably accessible because it is located in USPS network storage, and USPS has the infrastructure and protocols in place that will allow it to collect responsive data from those years and produce it before the February 11, 2022 production deadline.[11] However, the Court should not allow their belated request to expand the time limitation for the below reasons.

**Database Data from FY2018:** Data from USPS's databases from FY2018 is centrally archived on tapes within USPS and organized separately by fiscal year. As Defendants have explained to Plaintiffs, retrieving and loading that data onto network servers, so that USPS can then search for responsive records, is unduly burdensome. Defendants estimate that adding this additional fiscal year's worth of tape-stored data would require about eight additional weeks of effort to restore, search, and prepare for production.

In an effort to provide responsive data that is reasonably accessible, however, Defendants have offered to, and Plaintiffs have agreed to, Defendants' proposal to run a limited set of specific barcodes[12] through the FY2018 data and to produce that data within the allotted timeframe. That data is reasonably accessible because USPS has the infrastructure and protocols in place that will allow it to collect barcode-specific data from FY2018 and produce it before the February 11, 2022 production deadline.

By contrast, Defendants do not believe that USPS would be able to perform those tasks within the allotted timeframe for the much larger bodies of results that would likely flow from the keyword-based searches. Nevertheless, in an effort to avoid unnecessary litigation, Defendants have advised Plaintiffs that, to the extent that Defendants discover that USPS can perform keyword-based searches for FY2018 and produce that data prior to the February 11, 2022 production deadline, Defendants will do so.

---

[11] Plaintiffs' remark that Defendants have known about their requests since March 4, 2021 is misleading. On March 4, 2021, Plaintiffs served a large number of sweeping discovery requests. Defendants responded to these requests and raised burden, relevance, and other objections. Plaintiffs and Defendants spent the next several months in frequent communication to negotiate the scope of searches for email ESI. Plaintiffs did not raise the topic of database ESI with Defendants until the end of September 2021.

[12] Defendants obtained these barcodes from certain documents produced by Plaintiffs in this case. These barcodes refer to specific packages identified as containing cigarettes.

9

**Database Data from April 2015 to FY2017:** It would be unduly burdensome for USPS to search for data from April 2015 to FY2017. That is because the customs data from this period—the sender and package-contents data useful for keyword searching—is not housed in the EDW, the data system described above in which USPS's searches have been conducted thus far, but rather only in USPS's live EMCDB database.

As discussed above, USPS personnel use its live databases on a daily basis. These databases are not set up to support large-scale data searches of this nature. Therefore, to conduct these searches in EMCDB, USPS personnel would need to dedicate several weeks of their time writing search queries, conducting quality control of results, and running searches—instead of performing their day-to-day work for USPS operating the database and performing necessary law-enforcement functions. Those voluminous searches, moreover, would disrupt the normal processing of data and timely data exchanges among EMCDB, GBS, Customs and Data Protection's ("CBP") data systems, and other data systems used to operate USPS processing equipment. Those timely data exchanges are crucial to supporting USPS's day-to-day detection efforts and to guarding against erroneous acceptance and domestic transmission of suspicious packages, including but not limited to, cigarette packages. Because running these searches in the only available data system would jeopardize the integrity of that system and require an extraordinary commitment of time and personnel resources, the proposed extension of Defendants' searches would be unduly burdensome and disproportionate.

In an effort to produce reasonably accessible responsive data, however, Defendants have offered a similar proposal as it did for its FY2018 data: to run the limited set of barcodes obtained from Plaintiffs' production of documents for FY2017 data. Plaintiffs previously agreed to that proposal.

**Database Data from 2013 to April 2015:** As explained in detail to Plaintiffs, customs data for inbound international packages—the data needed for keyword-based searches to identify cigarette packages—does not exist in any USPS data system prior to April 2015, when EMCDB began to capture inbound data. PTR tracking history also does not exist prior to FY2015. While limited tracking history data may exist in the GBS database, USPS cannot differentiate cigarette packages from other packages without the customs data in EMCDB, from which USPS can run keyword searches to find and produce the responsive data. Accordingly, Defendants cannot produce data from 2013 to April 2015.

4. **Plaintiffs' Request for "Gift" Data is Overbroad, Unduly Burdensome, and Not Likely to Yield Relevant Data**

Plaintiffs' request that Defendants search for and produce data with the term "gift" is vague, overbroad, unduly burdensome, and not likely to yield information responsive to the issues in this case. The term can be, and is, applied to *any* commodity. The most that could be said is that a "gift" package *might* contain cigarettes—but it is even more likely to contain anything else in the world besides cigarettes. That is a far cry from the PACT Act's "reasonable cause to believe" standard.

Plaintiffs' attempt to analogize based on one example of the use of the term "gift" in one USPS document is unavailing. The referenced document is five years old and reflects guidance at a single USPS facility, which has been superseded by other, more recent detection and response methods for finding packages likely to contain cigarettes. Moreover, it is reasonable for internal USPS guidance aimed at real-time detection to refer to an overbroad term like "gift" as part of an

investigative process that includes holistic review of a mailpiece's physical characteristics and inspection of contents by CBP. But what Plaintiffs propose—treating the term "gift" as a universal signifier for "cigarettes" in retrospective discovery based solely on available data, without any opportunity to adduce additional indicia of suspicion—will produce reams of data on mailpieces without any apparent relationship to cigarettes.

To the extent that the search of "gift" might yield some data for packages identifiably containing cigarettes, that data will overlap with what Defendants have already agreed to search for and produce. Defendants, for instance, have agreed to search for data with cigarette-related keywords in the content descriptions in customs data. Defendants have also agreed to search for all items sent by foreign persons on the Non-Compliant List, regardless of content descriptions—including where the contents are described as "gifts." Plaintiffs' proposal thus requires a significant amount of additional burden without providing additional responsive data.

In addition, Plaintiffs' proposal to combine "gift"-described items with other characteristics does not advance their position. That a person sent or received multiple "gift" packages does nothing to indicate cigarette contents. Neither does the fact that a "gift" package had a certain weight; indeed, packages containing cigarettes can vary widely in their weight. Applying Plaintiffs' proposed searches does not come close to a reasonable method for inferring cigarette contents, let alone justifying a patently overbroad search for all data associated with "gift"-described packages.

Defendants estimate that the results of a search for all items described as "gift" for FY2019 to the present could result in excess of 9 million lines of data. These results are on the order of those anticipated for all of the searches that Defendants are already running—using criteria aimed specifically at identifiable cigarette packages—put together. Running those searches would also require several additional weeks, if not months, to prepare, run in the databases, and process for production. Defendants did not anticipate such a search when Defendants notified the Court that February 11, 2022 was a reasonable anticipated production deadline; such an additional search and production would require significant additional time beyond the date that the Court determined to be a reasonable and proportionate cutoff.

\* \* \*

In sum, Plaintiffs' proposals exceeds the bounds of relevance and proportionality under Rule 26 of the Federal Rules of Civil Procedure. Plaintiffs' proposed searches would be extraordinarily burdensome, while primarily producing results that are either redundant or nonresponsive. Accordingly, the Court should deny Plaintiffs' motion to compel.

Respectfully submitted,

/s/
Hope Y. Lu
Eric Proshansky
Assistant Corporation Counsels

cc: Counsel to All Parties (via ECF)